809 So.2d 537 (2002)
Alice R. DAVIS and Fred's Lounge, Inc., d/b/a Highway 30 Truck Plaza
v.
TOWN OF ST. GABRIEL and Diversified Professional Services, Inc.
No. 2001 CA 0031.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*538 Robert M. Marionneaux, Jr., Livonia, Counsel for Plaintiff/Appellee Highway 30 Enterprises, Inc., previously known as Fred's Lounge Inc. d/b/a Highway 30 Truck Plaza.
L. Phillip Canova, Jr., Plaquemine, Counsel for Defendant/Appellant Town of St. Gabriel.
Amy D. Berret, Baton Rouge, Counsel for Defendant/Appellant Diversified Professional Services, Inc.
*539 Before: FITZSIMMONS, DOWNING and LANIER[1], JJ.
LANIER, J.
This action commenced with a petition by a former member of a municipal governing authority asserting the municipality unlawfully granted a variance to the provisions of the municipality's zoning ordinance and issued an illegal building permit for the construction of a second video poker truck stop in the municipality. The variance and building permit were given pursuant to a compromise contract entered into by the municipality and the owner of the property on which the second truck stop was to be built. In cumulated actions, the plaintiff prayed for: (1) a declaratory judgment that the variance violated the zoning ordinance; (2) a temporary restraining order (TRO) enjoining the construction of the truck stop; and (3) a hearing for a preliminary injunction and a trial for a permanent injunction. The trial court granted the TRO and set a hearing on the preliminary injunction. Subsequently, the operator of the only existing video poker truck stop in the municipality intervened in the proceedings, obtained a TRO and prayed for the same relief as the original plaintiff. The original plaintiff dismissed her action with prejudice. The municipality and the owner of the proposed video poker truck stop filed dilatory exceptions raising the objection of prematurity and peremptory exceptions raising the objections of no cause of action and no right of action. The defendants asserted the petition of the operator of the existing truck stop was premature because the proposed truck stop was not in existence and its operator had no right and no cause of action because the issue was not a zoning violation but involved the issuance of a building permit. In addition, the municipality asserted the operator of the existing truck stop was attempting to operate a monopoly in violation of state and federal law. After a hearing, the trial court overruled the defendants' exceptions and rendered a judgment in favor of the intervenor that: (1) declared the issuance of the building permit violated the municipality's zoning ordinance; (2) granted a preliminary injunction enjoining the construction of the new truck stop; and (3) fixed a $500 bond for the preliminary injunction. The defendants took this devolutive appeal.

FACTS
The Town of St. Gabriel (Town) was incorporated in 1994 as a Lawrason Act municipality governed by the mayor-board of aldermen form of government. La. R.S. 33:321 et seq. (previously Act 136 of 1898.) Pursuant to La. R.S. 33:343, the Board of Aldermen is now the Town's Council. The Council is the legislative branch and governing authority of the Town. La. Const. of 1974, art. VI, § 44(2) and (4); La. R.S. 33:362A. At all times pertinent to this case, George L. Grace, Sr. (Mayor), was the mayor of the Town. The Mayor is the Town's chief executive officer. La. R.S. 33:362B.
On January 19, 1995, the Town adopted a building permit ordinance. This ordinance provided that no building or structure shall be built or altered in the Town until certain conditions were met and a building permit issued. The ordinance provided, in pertinent part, that "[n]o ... structure, building or part thereof shall hereafter be built ... until a plan of the proposed work, together with a statement of the materials to be used shall have been submitted to the building official who *540 shall, if in accordance with the provisions herein contained, issue a permit for the proposed construction." (Emphasis added.) The Mayor testified he granted these permits for the Town. At this time, there were no video poker truck stops (VPTS) in the Town.
On October 28, 1997, the Town issued a temporary building permit authorizing Fred's Lounge, Inc. d/b/a Highway 30 Truck Plaza (Fred's) to build a VPTS.[2] The Mayor testified that because of the size and location of the Town he was concerned about whether it could support a VPTS. Accordingly, he told Fred's it would be the only VPTS permitted in the Town until it got up and going. Thereafter, another VPTS might be considered. Further, the Mayor required Fred's to expand its original building plans to be more attractive to customers. The final cost of Fred's VPTS was approximately $6.5 million dollars. Dirt work on the project started in November 1997 and the building was completed in about November 1998. Fred's opened for business as just a truck stop during the week before Christmas in December 1998. Fred's video poker operation was commenced in April or May 1999. Fred's is still the only VPTS in the Town. Fred's generates $500,000 in annual revenues for the Town.
Diversified Professional Services, Inc. (Diversified) is a gaming consulting firm and a real estate brokerage. At all times pertinent to this case, it was represented by its president, James S. Vilas. At some time prior to December 1997, Vilas contacted the Mayor about purchasing land and building a VPTS in the Town. The Mayor went with Vilas to visit prospective building sites. The Mayor ultimately recommended a site across the road from Fred's. This site was purchased by Diversified in two acts of sale passed in December of 1997. The Mayor told Vilas that he granted the building permits for the Town and that Fred's was putting in a VPTS across the street.
Vilas started talking to the Mayor about getting a VPTS building permit for Diversified in about April 1998. In June and November 1998, Vilas showed the Mayor plans for the project. The Mayor tried to discourage Vilas about the project at this time. Because of the Mayor's negative attitude, Vilas did not go forward with the procedure for getting a building permit.
The Mayor testified he decided not to grant a building permit to Diversified in 1998 because he was concerned about the Town's ability to support more than one VPTS. However, he advised Diversified (through Vilas) that he would put the issue on the November 15, 1998 agenda of the Council for its consideration. In his testimony, the Mayor stated the approval of the Council was not required. The Council denied the permit.
On December 10, 1998, the Town adopted a zoning ordinance. The Mayor testified the zoning ordinance was passed to, among other things, stop the proliferation of VPTSs. The zoning ordinance provided that a "[g]ambling or gaming establishment when operated as part of a truck stop is a nonconforming use in any district;" it also "grandfathered" in Fred's. Vilas was present at the Council meeting at which the zoning ordinance was adopted.
After the zoning ordinance was passed, Vilas again spoke to the Mayor about the building permit. The Mayor told him to wait. Vilas waited until after the 1999 *541 Town elections. The Mayor was re-elected.
After the election, Vilas met with the Mayor again. They had several discussions during which Diversified agreed to several concessions that were favorable to the Town if a permit was granted. However, after almost a year, no permit was applied for and none was granted.
Diversified next retained legal counsel. By letter dated May 30, 2000, counsel for Diversified made demand on the Town for a building permit. Counsel asserted the prior denial of a permit was arbitrary and capricious and the Town's zoning ordinance was flawed on various legal grounds.
After getting Diversified's demand letter, the Town decided to resolve the dispute. The Mayor testified the Town wanted to "maintain [the] integrity of our Zoning Ordinance so that we could indeed stop everybody else, I mean five, six, more truck stops coming along there. So that's what we were trying to do. We were trying to, if we made a mistake clean that up, and also but from that point forward maintain our Zoning Ordinance."
On June 15, 2000, the Council adopted a resolution authorizing the Mayor to sign a compromise contract with Diversified and he did so. The compromise stated, in pertinent part, that "Diversified is granted a variance for the use of its property ... to construct, operate and maintain a Truck Stop facility, to include video poker." The compromise further stated that "[I]n consideration of the ... execution by St. Gabriel of a building permit to construct and operate a Truck Stop facility, to include video poker ... and grant a variance," Diversified granted a release from all liability to the Town.
On June 16, 2000, Diversified filed an application for a VPTS building permit and the Town issued it. Diversified paid a fee of $3,800 for the permit. The estimated cost of Diversified's proposed building is between 2 and 2.75 million dollars. Vilas testified Diversified intended to turn over the gaming operation to Nitro Gaming[3].
This litigation followed.

THE OBJECTION OF PREMATURITY

(Diversified's Assignment of Error No. 1)
Diversified asserts the trial Court erred by overruling its dilatory exception raising the objection of prematurity. The Town does not assign error to this ruling. Diversified asserts that Fred's petition is premature because, although Diversified has a building permit, no final plans have been prepared for the construction of its building and because Fred's has failed to assert irreparable injury.
The objection of prematurity is provided for in La. C.C.P. art. 423 which declares, in pertinent part, as follows:
When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued.
The objection of prematurity is raised in the dilatory exception. La. C.C.P. art. 926(1).
As previously indicated, this suit cumulates an action for a declaratory judgment with an action for an injunction. Pursuant to La. C.C.P. art. 862 courts can grant any relief to which a party is entitled if it is supported by the facts of the case. The essence of the claims in Fred's petition are that it is entitled to a declaratory judgment that the contract of compromise entered *542 into by the Town and Diversified for granting the variance and issuing the building permit is absolutely null and Fred's is entitled to enjoin the execution of it as an illegal act.
The trial court judgment states that "a `variance' was granted by the TOWN OF ST. GABRIEL allowing the issuance of a `building permit' in favor of DIVERSIFIED PROFESSIONAL SERVICES, INC. in violation of the Town's own Zoning Ordinance, number 1999-01." The trial judge did not provide reasons for judgment. It is implicit in this ruling that the compromise was considered absolutely null. If the compromise was valid, then the variance was legally granted and the building permit was validly issued. If the compromise was relatively null, Fred's would not have a right of action and the trial court could not recognize the relative nullity on its own motion. La. C.C. art. 2031 states that "[r]elative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative." Therefore, a resolution of this case turns on whether the contract was an absolute nullity and whether the zoning ordinance was violated.
Actions for declaratory judgment are provided for in La. C.C.P. art. 1871 et seq. In particular, La. C.C.P. art. 1872 provides, in pertinent part, that "[a] person interested ... whose rights, status, or other legal relations are affected by a ... municipal ordinance, contract... may have determined any question of construction or validity arising under the... ordinance, contract ... and obtain a declaration of rights, status, or other legal relations thereunder." The distinction between a declaratory judgment and a conventional judgment is explained in the Official Revision Comments for La. C.C.P. art. 1871, as follows:
The conventional type of judgment embodies two elements: (1) an ascertainment or declaration of the rights of the parties (usually implied); and (2) a specific award of relief. The declaratory judgment embodies only the first element which, of course, is always express. There is actually no such thing as a declaratory action, even if the sole relief prayed for is a declaratory judgment. The action is identical, regardless of whether greater or lesser relief is prayed for; the difference is only as to the type of judgment to be rendered.
The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Watts v. Aetna Casualty & Surety Co., 574 So.2d 364 (La.App. 1 Cir. 1990), writ denied, 568 So.2d 1089 (La. 1990); State, Department of Transportation & Development v. Sugarland Ventures, Inc., 476 So.2d 970 (La.App. 1 Cir.), writ denied, 478 So.2d 909 (La.1985). A declaratory judgment action authorizes a court ruling on certain types of issues even though those issues would not be "justifiable" in an ordinary action. This case involves the validity of a contract and possible violation of an ordinance. These issues are not premature when raised in an action for a declaratory judgment.
Actions for injunctions are provided for in La. C.C.P. art. 3601 et seq. It is settled in the jurisprudence that if the action or conduct complained of is unlawful, a showing of irreparable injury is not necessary or a prerequisite to obtaining injunctive relief. State Through Louisiana State Board of Examiners of Psychologists of Dept. of Health and Human Services v. Atterberry, 664 So.2d 1216, 1220 (La.App. 1 Cir.1995); Guzzardo v. Town of Greensburg, 563 So.2d 424, 427 (La.App. 1 Cir.1990); Hays v. City of Baton Rouge, *543 421 So.2d 347, 349 (La.App. 1 Cir.1982). If the compromise contract is an absolute nullity, then the building permit was unlawfully issued and construction pursuant to the invalid building permit would be illegal. This action is not premature.
This part of Diversified's assignment of error 1 is without merit.

THE OBJECTIONS OF NO CAUSE OF ACTION AND NO RIGHT OF ACTION

(Diversified's assignment of error 1 and the Town's assignment of error 1)
The Town asserts that since it "proved that it entered a compromise with Diversified, Fred's has no cause of action or right of action against" it. Diversified contends that "since we are not dealing with a zoning issue, Fred's has no right of action."
The objection of no cause of action raised in the peremptory exception questions whether the law affords any remedy to a plaintiff under the allegations of the petition. La. C.C.P. art. 927(4); Succession of Bertaut, 572 So.2d 142 (La.App. 1 Cir.1990), writ denied, 573 So.2d 1111 (La. 1991). Pursuant to La. C.C.P. art. 931, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." For purposes of the objection of no cause of action, all facts pleaded in the petition are accepted as true, and any doubts are resolved in favor of the sufficiency of the petition. Philippe v. Lloyd's Aero Boliviano, 589 So.2d 536 (La.App. 1 Cir.1991), writ denied, 590 So.2d 594 (La.1992).
The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff and determines if the plaintiff is in the class of persons who have a right or legal interest in the subject matter of the suit. Fulford v. Green, 474 So.2d 972 (La. App. 1 Cir.1985).
Nullity of contracts is provided for in La. C.C. art. 2029 et seq. As previously indicated, the essence of Fred's petition is that the Town-Diversified compromise contract is an absolute nullity; that is a cause of action. La. C.C. art. 2030 states in pertinent part, that "[a]bsolute nullity may be invoked by any person...." Alco Collections, Inc. v. Poirier, 95-2582 (La. App. 1 Cir. 9/27/96), 680 So.2d 735, writ denied, 96-2628 (La.12/13/96), 692 So.2d 1067. Pursuant to La. C.C. art. 24 Fred's is a person, and, thus, has a right of action.
These assignments of error are without merit.

VALIDITY OF THE TOWN-DIVERSIFIED COMPROMISE CONTRACT

(Diversified's assignments of error 2 and 3 and the Town's assignment of error 2)
Diversified asserts "that the trial court erred in rendering declaratory judgment in favor of ... Fred's ... declaring that a `variance' was granted by the town... allowing the issuance of a `building permit' in favor of Diversified ... in violation of the town's own Zoning Ordinance..." and granting the preliminary injunction. The Town asserts that "[b]ecause Fred's sole interest is to prevent economic competition by seeking an injunction based on a zoning violation, an injunction is not available to Fred's...."

The Town's Zoning Ordinance
For purposes of Article VI of the Louisiana Constitution of 1974, the Town is a "local governmental subdivision." La. Const. of 1974, art. VI, § 44(1) and (3). *544 La. Const. of 1974, art. VI, § 17 provides, in pertinent part, as follows:

Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. (Emphasis added.)
The legislature has provided for zoning in municipalities in La. R.S. 33:4721 et seq. La. R.S. 33:4722A and C provide, in pertinent part, as follows:
A. For any and all of the purposes set forth in R.S. 33:34721 the governing authority of any municipality may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes; and within the districts so created, the governing authority may regulate and restrict the erection, construction, alteration, or use of buildings, structures or land.

C. All such regulations shall be uniform for each class or kind of land and structure throughout each district, but the regulation of one district may differ from those in other districts. (Emphasis added.)
La. R.S. 33:4726A provides as follows:

In order to avail itself of the powers conferred by R.S. 33:4721 through 4729, the legislative body of the municipality shall appoint a zoning commission whose function it shall be to recommend the boundaries of the various original districts as well as the restrictions and regulations to be enforced therein, and any supplements, changes, or modification thereof. Before making any recommendation to the legislative body of the municipality, the zoning commission shall hold a public hearing. Notice of the time and place of the hearing shall be published at least three times in the official journal of the municipality, or if there be none, in a paper of general circulation therein, and at least ten days shall elapse between the first publication and date of the hearing. After the hearing has been held by the zoning commission, it shall make a report of its findings and recommendations to the legislative body of the municipality. The legislative body shall not hold its public hearings or take action until it has received the final report of the zoning commission. (Emphasis added.)
La. R.S. 33:4724 provides for a public hearing by the legislative body of a municipality when a change in the zoning plan is submitted to it. Finally, La. R.S. 27:324A of the Video Draw Poker Devises Control Law provides as follows:
Notwithstanding the provisions of R.S. 27:314, local governing authorities shall be authorized to enact zoning ordinances and building codes to regulate and restrict the placement or use of video draw poker devices, or the location, design, and construction of building, structures, and land for licensed video draw poker device operation at qualified truck stop facilities, except that such ordinances shall not exempt any device owner or operator or any other licensee from any of the restrictions on the ownership, operation, use, or location of video draw poker devises as provided in this Chapter.
Section 4(a) of the Town's zoning ordinance provides as follows:
No building, structure or land shall hereafter be used or occupied, and no *545 building or structure or part thereof shall hereafter be erected, constructed, reconstructed, moved or structurally altered unless in conformity with all of the regulations herein specified for the district in which it is located.
Section 14(e) of the Town's zoning ordinance provides as follows:
Gambling or gaming establishment when operated as part of a truck stop is a nonconforming use in any district. The operation of any gambling or gaming establishment when operated as part of a truck stop, exactly as such use existed on the effective date of this zoning Ordinance, may be continued as a nonconforming use. If this nonconforming use is abandoned, discontinued or ceases to operate it shall not thereafter be reestablished.
With this provision, the Town "grandfathered" in Fred's and barred the construction of any new VPTSs. Section 17 of the Town's zoning ordinance provides as follows:
A variance is a relaxation of the terms of this chapter where such variance will not be contrary to the public interest and where, owing to conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of this chapter would result in unnecessary and undue hardship. As used in this chapter, a variance is authorized only for height, area and size of structure or size of yards, open spaces and landscaping: establishment of expansion of use otherwise prohibited shall not be allowed by variance, nor shall a variance be granted because of the presence of nonconformities in the district. The Zoning and Planning Commission shall be responsible for granting or denying variances; however, the Board of Aldermen may, by a majority vote, overturn any denial of a variance by the Zoning and Planning Commission and grant the requested variance. (Emphasis added).

The Town-Diversity Compromise Contract
A compromise is a nominate contract provided for in La. C.C. art. 3071 et seq. The essential elements of a compromise are (1) mutual intention to put an end to possible or existing litigation, and (2) reciprocal concessions of the parties for adjustment of their differences. It is sacramental that the contract either be in writing or recited in open court. La. C.C. art. 3071.
The May 30, 2000 letter from Diversified's attorney to the Town stated that "my client engaged our services to seek legal action, if necessary against the Town for failure to issue his permit under the authority then in force." The letter itemized Diversified's legal claims and stated that "by treating my client's original request arbitrarily and capriciously may subject the Town to liability for damages caused by your actions and the continued damages until this matter is settled."
The June 15, 2000 compromise agreement is in writing and contains reciprocal concessions. The Town agreed that "Diversified is granted a variance for the use of its property ... to construct, operate and maintain a Truck Stop facility, to include video poker." The compromise then provided that "For and in consideration of the transfer and execution by St. Gabriel of a building permit to construct and operate a Truck Stop facility, to include video poker ... and grant a variance as described above to Diversified[]" that Diversified agreed to the following:
1) Grant a full and complete release of any and all claims against the Town;
2) "Enter into an agreement with Operator [Operator is not identified] to *546 construct a Truck Stop facility comparable to the current Truck Stop facility currently operating in St. Gabriel";
3) Require the Operator to hire persons from the Town for the construction, maintenance and operation of the facility;
4) Require the Operator to donate a minimum of $20,000 annually to churches, schools and/or non-profit organizations operating in the Town;
5) Make an effort to bring economic development to the Town; and
6) Make an effort to donate property to the Town to build a community center.
This agreement was approved by a resolution of the Council.

Absolute Nullity
It is hornbook law that laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13; Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1 Cir.1984). La. R.S. 13:5109C provides as follows:
The governing authority of a parish or municipality, upon the advice and the concurrence of the district attorney, parish attorney, or city attorney of that parish or municipality or proper official as the case may be, may compromise or settle any claim against that parish or municipality without the necessity for the filing of a suit against the parish or municipality in the matter. Any such compromise settlement shall be exigible, payable, and paid only out of funds appropriated for that purpose by the governing authority of that parish or municipality. No claim in excess of ten thousand dollars may be compromised or settled as provided herein before ten days have elapsed after the publication of such proposed compromise of settlement in the official journal of the appropriate political subdivision. (Emphasis added.)
There is no direct evidence in the record that assesses a value for Diversified's claim. However, the concessions agreed to by Diversified in the compromise show the assumption of financial obligations greater than $10,000. From this, it reasonably can be inferred that Diversified expected to make profits much greater than that amount, and loss of these profits would be claimed as damages if the building permit were wrongfully denied. Further, at page 363 of the transcript, Mr. Vilas, Diversified's President, testified the average income in the state from a VPTS with 50 machines was a little over two million dollars per year and that Fred's was making over six million dollars per year. At page vii of its brief, Diversified asserts that its "damages could well exceed $2 million...." At page 14 of its brief, Diversified asserts that a preliminary injunction bond of $3 million dollars is necessary to cover its damages. These statements are judicial confessions as provided for in La. C.C. art. 1853. There is no evidence in the record that the Town-Diversified compromise was published as required by La. R.S. 13:5109C.
Contracts have the effect of law for the parties and may be dissolved on grounds provided by law. La. C.C. art. 1983. Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. La. C.C. art. 7. Zoning laws are enacted pursuant to the police power and are for the protection of the public interest. La. Const. of 1974, art. VI, § 17; La. R.S. 33:4721. The sources of law are legislation and custom. La. C.C. art. 1. Legislation is the solemn expression of legislative will. La. C.C. art. 2. As previously indicated, the Town's Council is the legislative branch of the *547 Town's form of local government. The Council's ordinances are expressions of the Town's legislative will. La. R.S. 33:406A(1) of the Lawrason Act provides that "[a]ny law enacted by a board of aldermen shall be by ordinance." (Emphasis added.) Thus, the Town's zoning ordinance is a law for purposes of this case. Because the zoning ordinance is a law, it can be amended only by another ordinance; it cannot be amended by a resolution. On page 3 of its May 30, 2000 demand letter, Diversified proposed the adoption of an ordinance "which would allow for the granting of the request for a building permit to construct and operate a Truck Stop facility."
Any act in derogation of a law enacted for the protection of the public interest is an absolute nullity. La. C.C. arts. 7 and 2029 et seq. In Baker v. Maclay Properties Company, 648 So.2d 888, 895-6 (La. 1995) appears the following:
LSA-C.C. art. 1966 provides that an obligation cannot exist without a lawful cause. Cause is the reason that a party obligates itself. LSA-C.C. art. 1967. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. LSA-C.C. art. 1968. A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. LSA-C.C. art. 2030. Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. LSA-C.C. art. 7. See Holliday v. Holliday, 358 So.2d 618 (La. 1978).
The compromise herein was approved by a resolution of the Town's Council. La. R.S. 33:406A(2) provides that "Any act of the board which is not law shall be by resolution." The practical effect of the compromise is that the Town has granted a variance to its zoning ordinance (law) and issued a building permit to Diversified by an act of the Town's Council that is not law. This procedure is in derogation of a law (zoning ordinance) enacted for the protection of the public interest in violation of La. C.C. art. 7 and omits a requirement (approval by ordinance) for the proper formation of this compromise as required by La. C.C. art. 2029. This holding is limited to this type of contract under the particular facts of this case. We pretermit ruling on whether this type of compromise may be validated individually by ordinance or must be authorized by an amendment of the zoning ordinance.
There are very strong public policy reasons for this holding. The right of the public to view proceedings of public bodies and participate therein is constitutional in Louisiana. La. Const. of 1974, art. XII, § 3. The Louisiana Supreme Court has held that this right must be liberally construed. DeSalvo v. State, 624 So.2d 897 (La.1993). To implement this public policy, the zoning laws of the state provide for public hearings and public notice when variances are involved. La. R.S. 33:4724 and 4726. Further, the ordinance adoption procedure in the Lawrason Act requires public hearings and public notice and has the check and balance of a mayoral veto. La. R.S. 33:406. La. R.S. 13:5109C requires a 10 day public notice as a condition precedent for approval of a compromise where the claim exceeds $10,000. Conversely, no notice of public hearings are required for resolutions adopted by the Town's Council and the Mayor has no veto in the procedure for adopting a resolution, except where the resolution involves the expenditure of dedicated *548 funds. In the factual setting of this case, the public policies involved in zoning and in the public's right to know require at least a public hearing after adequate public notice in an ordinance procedure before this type of a compromise can be approved. These conditions precedent have not been met in this case, and the compromise contract is absolutely null. Because the compromise is absolutely null, the building permit issued pursuant to it is invalid. The parties are restored to the situation that existed before the contract was made. La. C.C. art. 2033. The issuance of the building permit pursuant to the absolutely null compromise was an unlawful act and a preliminary injunction is a proper remedy to prohibit illegal construction pursuant to it.
These assignments of error are without merit.

ADEQUACY OF PRELIMINARY INJUNCTION BOND

(Diversified's assignment of error 4)
The trial court fixed a $500 bond for the preliminary injunction pursuant to La. C.C.P. art. 3610. Diversified asserts the amount of the bond is insufficient to cover its damages and costs and "should be increased to a minimum of $3 million." We agree that the bond should be increased and order that it be increased to $100,000.
This assignment of error has some merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part and amended in part. The appellants are cast for all costs of this appeal of $2,289.22. La. R.S. 13:5112A.
AFFIRMED IN PART AND AMENDED IN PART.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur. The contract at issue, the compromise, can be found void for many reasons. For example, valid town ordinances governing VPTSs and the grounds for amendments and variances prohibited the issuance of a building permit under the particular facts of this case. Although Diversified argues that ordinances cannot be applied retroactively, that is not a correct statement of the law. Zoning ordinances may be applied retroactively when necessary for the welfare of the public. See Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 672 (La.1975) (on rehearing); Summerell v. Phillips, 258 La. 587, 247 So.2d 542, 544 (La.1971); Hi-Lo Oil Company v. City of Crowley, 274 So.2d 757, 761 (La.App. 3rd Cir.1973), writ denied, City of Crowley v. Pic-A-Pak Grocery Corp., 277 So.2d 673 (La.1973). Any municipality would be concerned that uncontrolled rapid growth could have a negative impact on its infrastructure and economy. This is especially true in a small community, or rapidly expanding rural parish, which is less able to provide the infrastructure and profit base required, or to withstand subsequent business failures from overgrowth. Alternatively, it can be legitimately argued that Diversified did not challenge the 1998 denial of its application within a reasonable period of time. Thus, the May, 2000 challenge letter and the June 16, 2000 application, both made over a year and one-half after the 1998 denial, can be reasonably construed only as a new application subject to the prohibitory ordinance. Surely a denied application in one year cannot act *549 as a permanent protection against all subsequent legal requirements. The characterization of the 2000 application as new is bolstered by Diversified's acceptance of a compromise that recognized a "variance" was being granted. Lastly, I agree with the opinion's author that the applicable ordinances cannot be amended by a council resolution.
A contract entered into in violation of law has no legal cause. La. C.C. arts. 1966, 1968, and 1971. If a contract is unlawful, it is absolutely null. La. C.C. art. 2030. Without a valid compromise or variance, the issuance of the permit was illegal. These parties cannot accomplish by compromise what is forbidden them by law.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The permit was issued in the name of Fred's contractor, Quality Design and Construction, Inc.
[3] Nitro Gaming is not identified further in the record.