915 So.2d 875 (2005)
Gregory J. WEIMER, Kenneth Mizell, et al.
v.
THE CITY OF BATON ROUGE (Baton Rouge Fire Department)
No. 2004 CA 0634.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, for Plaintiffs-Appellees Gregory J. Weimer, Kenneth Mizell, et al.
Michael E. Ponder, Parish Attorney, Dawn N. Guillot, Assistant Parish Attorney, Baton Rouge, for Defendant-Appellant The City of Baton Rouge (Baton Rouge Fire Department).
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
The City of Baton Rouge, as the operator of the Baton Rouge Fire Department *876 (the city fire department), appeals a judgment in favor of Gregory J. Weimer, Kenneth Mizell, Jeremy Shane Spillman, Rodney Joseph Gremillion (the firefighters), and the International Association of Firefighters, Local # 557, AFL-CIO (the local union). This judgment permanently enjoined the implementation of mandatory employee physical fitness and/or exercise tests included in the fire department's "Wellness and Fitness Program," while allowing the mandatory medical examinations to continue. We affirm in part, reverse in part, and render.

FACTUAL AND PROCEDURAL BACKGROUND
In July 2003, the city fire department implemented a "Wellness and Fitness Program" (the Program), calling for periodic physical fitness tests, an exercise regimen, and annual medical examinations for all current firefighters employed by the city fire department. The Program was instituted without the approval of the Municipal Fire and Police Civil Service Board (the Board) for the city or the State Examiner (the State Examiner) for the statewide system of the municipal fire and police civil service. The firefighters and the local union filed a petition against the city fire department, seeking injunctive relief from certain aspects of the Program. They alleged that implementation of the Program usurped authority over classification plans for classified employees of the city fire department, which authority is granted solely to the State Examiner and/or the Board. They noted that a classification plan has been duly adopted pursuant to these statutory provisions and is applicable to the city fire department; that classification plan does not include the mandatory physical fitness tests and exercise regimens, which were unilaterally adopted by the city fire department without the approval of the Board or the State Examiner. Therefore, the firefighters and the local union claimed these portions of the Program were illegal, null, and void. They further contended that application of the Program would cause them irreparable injury for which there was no adequate remedy at law, and they were therefore entitled to preliminary and permanent injunctive relief.
The city fire department filed a general denial, and further alleged that the statutory provisions were not relevant or applicable to the Program. At the hearing on the preliminary injunction, the parties agreed to submit a joint stipulation of facts, to be considered by the court in lieu of an evidentiary hearing. The joint stipulation of uncontested facts (the stipulation) stated the following:
1. Gregory J. Weimer, Kenneth Mizell, Jeremy Shane Spillman and Rodney Joseph Gremillion are classified employees of the Baton Rouge Fire Department serving with permanent status.
2. The International Association of Firefighters, Local # 557, AFL-CIO is the duly recognized collective bargaining agent for firemen employed by the City of Baton Rouge in the Baton Rouge Fire Department.
3. The City of Baton Rouge Fire Department, through its Fire Chief Ed Smith on or about the 31st day of July, 2003 implemented a plan known as the "Wellness and Fitness Program". A copy of the "Wellness and Fitness Program" is attached hereto as Joint Exhibit "A".
4. The City of Baton Rouge's Wellness and Fitness Program was adopted in response to the International Association of Firefighters and International Association of Fire Chiefs Joint Labor Management Wellness and Fitness Initiative attached as Exhibit "B".

*877 5. Beginning July 31, 2003, firemen employed by the City of Baton Rouge Fire Department have been ordered to submit to physical examinations under this "Wellness and Fitness Program". A fireman ordered to submit to this physical is given a packet of documents which includes forms for the compilation of a detailed medical history. A copy of this packet is attached as Joint Exhibit # "C". This packet was given to "B" shift. A packet without the fitness information (pages 3-8 of the packet) was given to "A" and "C" shift.
6. Each of your individual plaintiffs have or will be subjected to having to undergo the annual physical examination as required by the Wellness and Fitness Program.
7. The Wellness and Fitness Program was implemented without the approval of the International Association of Firefighters Local Union # 557, AFL-CIO or the individual plaintiffs as evidenced by the vote of the Local Union # 557 membership to initiate this lawsuit.
8. The Wellness and Fitness Program was not presented to or adopted by the Municipal Fire and Police Civil Service Board of the City of Baton Rouge.
9. The Wellness and Fitness Program was not approved by the Municipal Fire and Police Civil Service Board of the City of Baton Rouge prior to its adoption/implementation by the City of Baton Rouge Fire Department.
10. The Wellness and Fitness Program was not approved by the State Examiner Municipal Fire and Police Civil Service prior to its adoption/implementation by the City of Baton Rouge Fire Department.
11. The City of Baton Rouge and the International Association of Firefighters, Local # 557, AFL-CIO are signatory to a collective bargaining agreement, a copy of which is attached hereto as Joint Exhibit # D.
12. The Wellness and Fitness Program was not prepared by nor is it administered by the State Examiner, Municipal Fire and Police Civil Service.
13. If called to testify the plaintiffs would testify that they object that the Wellness and Fitness Program (Exhibit A) has no written language guaranteeing that an employee who fails to pass an annual physical and/or fitness evaluation cannot be disciplined or guaranteeing that the results of an annual physical and/or fitness evaluation cannot be used to deny promotions.
14. If called to testify the plaintiffs would testify that they believe that the Wellness and Fitness Program including but not limited to the medical questionnaire in Exhibit "C" goes beyond what is reasonably necessary to test the relative capacity and fitness of a firefighter to discharge the duties characteristic of his position of employment.
15. If called to testify the plaintiffs would testify that they believe the Wellness and Fitness Program presents confidentiality and invasion of privacy issues.
16. If called to testify the plaintiffs would testify that the individual firefighters have not been afforded a reasonable opportunity to express their concerns regarding the program.
17. If called to testify Chief Ed Smith would testify that he implemented the Wellness and Fitness Program in conjunction with the International Association of Firefighters and International Association of Fire Chiefs Joint Labor Management Wellness and Fitness Initiative attached as Exhibit "B".
18. If called to testify Chief Smith would testify that he formed a committee composed of Union members and *878 persons known to be for and against the program and that the committee reviewed the program with the Union Executive Board. He approved almost all requests for amendments made by the committee. He also posted all information at each station and asked for questions or comments and received no response. (See Exhibit "E".)
19. If called to testify Chief Smith would testify that the Wellness and Fitness Program is not designed to test the firefighter's fitness for entrance or promotion and that the results will not be used for discipline or to deny promotions.
20. If called to testify Chief Smith would testify that he believes the Wellness and Fitness Program adheres to the goals and objectives of the International Association of Firefighters and International Association of Fire Chiefs Joint Labor Management Wellness and Fitness Initiative attached as Exhibit "B" and is a comprehensive program to maintain physical and mental capabilities.
21. If called to testify Melinda Livingston, the State Examiner, would testify that she believes after reviewing Exhibit "A" that the Wellness and Fitness Program is not designed to test the firefighter's fitness for entrance or promotion and therefore her office or the Municipal Fire and Police Civil Service Board has no duties or responsibilities regarding the program.
22. The parties stipulate by entering into this stipulation they do not waive their rights to argue the relevancy of any of the stipulations.
23. The parties agree to submit briefs on or before August 29, 2003.
After reviewing these submissions, the court concluded the Program was in violation of LSA-R.S. 33:2483, in that, although it did not purport to be a classification of employee positions, it was inherent that employees who passed the physical fitness and exercise tests would be placed in a different "class" from those who failed those tests. As such, the Program functioned as a classification plan and could only be implemented after being adopted by the Board through its rule-making authority. The failure to be so adopted made the implementation of the Program illegal, thus justifying injunctive relief. The court entered judgment in favor of the firefighters and the local union, permanently enjoining the city fire department's implementation of the Program, insofar as it required mandatory employee physical fitness and/or exercise tests. However, the judgment specifically stated that the injunction did not apply to the medical examinations that were also required by the Program, apparently because the plaintiffs had not sought relief from those provisions in their petition.
In this appeal of that judgment, the city fire department claims the court erred in granting the injunction. More particularly, it argues the court erred in finding that the Program created inherent classifications of employees based on whether they passed or failed the physical fitness and/or exercise tests. Therefore, the classification statutes were inapplicable and irrelevant, and there was no requirement for the Board or the State Examiner to be involved in preparing, approving, adopting, or implementing the Program. The firefighters and the local union did not appeal or answer the appeal.

INJUNCTION
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. LSA-C.C.P. art. 3601. The judicial branch *879 may not ordinarily enjoin a municipal body from acting under the guise of its legislative powers. Louisiana Associated Gen. Contractors, Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354, 1359 (La.1991). However, where the threatened action of a municipal body is "in direct violation of a prohibitory law," a court of equity may enjoin the threatened action. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth., 04-0211 (La.3/18/04), 867 So.2d 651, 656. Moreover, if the action or conduct complained of is unlawful, a showing of irreparable injury is not necessary or a prerequisite to obtaining injunctive relief. Davis v. Town of St. Gabriel, 01-0031 (La.App. 1st Cir.2/15/02), 809 So.2d 537, 542; see also Paradigm Ins. Co. v. Louisiana Patient's Comp. Fund Oversight Bd., 95-1727 (La. App. 1st Cir.9/27/96), 680 So.2d 783, 785. Louisiana Code of Civil Procedure article 3612 provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." See Chandler v. State, Dept. of Transp. & Dev., 02-1410 (La.App. 1st Cir.3/28/03), 844 So.2d 905, 909.

LEGAL PROVISIONS
Louisiana Revised Statute 33:2476 establishes a fire and police civil service board in the municipal government. According to LSA-R.S. 33:2477(7) and (8), the Board has authority to make, alter, amend, and promulgate rules, and has the duty to adopt and maintain classification plans, by its rules, for classified fire and police employees. The State Examiner assists in the rule-making process of the Board. See LSA-R.S. 33:2478. One duty of the State Examiner is to prepare and submit a classification plan to the Board for approval, after consultation with the appointing and departmental authorities of the departmental service for which such a plan is prepared and submitted. LSA-R.S. 33:2479(G)(2). The State Examiner also prepares and administers tests of fitness for original entrance and promotion to applicants for positions of employment in the classified service of municipalities. LSA-R.S. 33:2479(G)(3). According to LSA-R.S. 33:2481(A)(Fire), firefighters are members of the classified service.
Louisiana Revised Statute 33:2473(6) defines a classification plan as "all the classes of positions established for the classified service." A "class" or "class of position" is defined in LSA-R.S. 33:2473(5) as:
a definitely recognized kind of employment in the classified service, designated to embrace positions that are so nearly alike in the essential character of their duties, responsibilities, and consequent qualification requirements, that they can fairly and equitably be treated alike under like conditions for all personnel purposes.
The interrelationship between the Board and the State Examiner with regard to classification plans is set out in LSA-R.S. 33:2483, as follows:
Each board ... shall adopt a classification plan for the fire and police services of the municipality. Each classification plan shall consist of classes to be designated either by standard titles, ranks, or a combination thereof, for all positions included in the classified service for each of the fire and police services. The classification plan may be divided into groups of classes. The various classes of positions shall be arranged in each classification plan so as to show the principal and natural lines of promotion and demotion. The classification plan shall be adopted as rules of the board, in the manner provided by this Part for the adoption of rules. Rules creating the classification plan, future *880 classifications, abolition of any classification, any amendment thereto, or revision thereof shall be adopted by a board only after consultation with the appointing authority, and the state examiner. The original classification plan to be established when this Part takes effect in a municipality shall be prepared, after consultation with the appointing authority, and submitted to the board for its approval and adoption, by the state examiner. The board may amend or revise the classification plans before adopting them. The state examiner shall advise and assist the board in all future classifications when requested to do so.
According to LSA-R.S. 33:2492, the Board is to provide through the State Examiner for tests to determine the eligibility of applicants for entry upon the promotional and competitive employment lists. All such tests are to be restricted to those matters which will fairly test the relative capacity and fitness of the candidates to discharge the duties characteristic of positions of the class to which they seek to be appointed or promoted. LSA-R.S. 33:2492(B). Only the State Examiner has the authority to prepare, administer, and score any such tests, the results of which are to be provided to the Board. LSA-R.S. 33:2492(F). Special requirements for admission to tests or eligibility for appointment, such as age, education, physical requirements, etc., may be established by the rules adopted by the Board. LSA-R.S 33:2493(D). The reasons for corrective or disciplinary action are described by LSA-R.S. 33:2500, and include, in sub-paragraph (A)(13), the development of any defect of physical condition which precludes the employee from properly performing the duties of his position, or the development of any physical condition that may endanger the health or lives of fellow employees.

ANALYSIS
The district court in this case concluded that implementation of the Program by the city fire department without prior adoption by the Board was an unlawful abrogation of the Board's authority under LSA-R.S. 33:2483. Because the action was illegal, the firefighters and the local union did not have to prove irreparable injury in order to be entitled to injunctive relief. The city fire department contends on appeal that the court legally erred in concluding the Program violated LSA-R.S. 33:2483, and therefore, the injunction should not have been granted.
After a thorough review of the Program and the stipulation, we find the evidence does not support the district court's conclusion that the statute was violated by the city fire department's adoption of the Program without its first being approved by the Board. Louisiana Revised Statute 33:2483 addresses only creation of classification plans, future classifications, abolition of any classification, and any plan amendment or revision. These are the only matters that are required to be adopted by the Board, utilizing its rule-making authority, after consultation with the appointing authority and the State Examiner. A classification plan consists of classes designated by titles, ranks, or a combination thereof, for all positions included in the classified service for each of the fire and police services. The record does not reveal anything in the Program that could affect the firefighters' classification plan.
The first item on the Program's policy statement is that it "will adhere to the goals and tenets of" the Fire Service Joint Labor Management Wellness-Fitness Initiative, *881 Second Edition (the Initiative).[1] The Initiative, which was developed by representatives from the International Association of Fire Fighters and the International Association of Fire Chiefs, outlines a comprehensive system to improve the wellness of fire department uniformed personnel; it is to be implemented as a non-punitive, positive, individualized program. To that end, the Initiative specifies that medical examinations and physical fitness test results are to be measured against the individual's previous examinations and assessments and not against any standard or norm. Accordingly, under the Initiative, there are no "pass" or "fail" results  only an evaluation of each person's current physical fitness and condition, as compared to his or her past physical fitness and condition.
The Program provides considerably less detail in its three pages (plus four pages of flow charts)[2] than is provided in the one hundred four pages (plus over fifty pages of appendixes) of the Initiative. However, the Program uses some of the worksheets provided as part of the Initiative documents,[3] and references and adopts its purposes and goals. The major areas of the Program implemented by the city fire department are the annual medical evaluation, fitness regimen and evaluation, rehabilitation provisions, and a cardiac stress test every five years. As part of the Program, each fire substation was provided with fitness/strength equipment and treadmills. Firefighters are required to participate in physical fitness training for up to one hour and thirty minutes for 24-hour shifts and 45 minutes for straight day personnel during their regular working hours. Therefore, under the Program, they are being paid while they exercise.
In keeping with the goals of the Initiative, the Program's information letter,[4] entitled "BRFD  Annual Fitness Evaluation Information," which is provided to firefighters who are scheduled to participate in the initial fitness evaluation, states:
The purpose of the fitness evaluation is to establish what your level of fitness is in a variety of areas including aerobic capacity, strength, endurance and flexibility.... You are only competing against yourself so there is no pass or fail on this test.
Before any fitness evaluation is conducted, a physical activity readiness questionnaire must be completed by the firefighter. That one-page questionnaire elicits information about possible heart or circulatory problems and their danger signs (high blood pressure, chest pain, dizziness, tobacco use, high cholesterol levels, and family history), current medications, and back or joint problems that might be aggravated by certain movements; such information is reasonable and necessary in order to ensure safe participation in any exercise regimen or fitness evaluation. The Program provides that fitness evaluations are to be conducted by contracted professional physical therapy technicians, who will communicate the results of the evaluation only to the firefighter and to the doctors who are contracted to provide the Program's medical evaluations. According to a flow chart in the Program documents, the city fire department does not receive the results of the fitness evaluation; it gets only *882 a notification that a firefighter has participated in it.
The annual medical evaluation is much more extensive, and the medical history questionnaire is very comprehensive. Based on Item Nos. 5, 14, and 15 of the stipulation, it appears that it is this detailed questionnaire that is most objectionable to the firefighters. However, the firefighters and the local union did not intend to completely abrogate the Program, as their petition was quite specific in its complaints.[5] As noted by the district court, the petition seeks to enjoin only the "physical fitness testing/exercise program." It does not seek to prevent the annual medical evaluation or five-year cardiac stress test, for which the more detailed questionnaire is required. Therefore, these objections are not relevant to the injunctive relief actually sought in the petition.
It appears from the stipulation that another of the firefighters' main objections is to the Program's lack of "written language guaranteeing that an employee who fails to pass an annual physical and/or fitness evaluation cannot be disciplined or guaranteeing that the results of an annual physical and/or fitness evaluation cannot be used to deny promotions." This factor also influenced the district court. However, the only evidence presented on this issue was the statement of Chief Ed Smith that the Program is not designed to test the firefighter's fitness for entrance or promotion and that the results will not be used for discipline or to deny promotions. This statement is supported by the Initiative and Program documents, and there was no evidence presented to refute it.
The firefighters and the local union also claim they were not afforded a reasonable opportunity to express their concerns regarding the Program. This is belied by the evidence from Chief Smith that he formed a committee composed of union members and persons known to be for and against the Program. According to Chief Smith, the committee reviewed the Program with the executive board of the local union, and he approved almost all of the committee's requests for amendments. He also testified that he posted information concerning the Program at each substation and asked for questions or comments, but received no response. His information letter[6] clearly states that the Program components include an annual fitness evaluation to determine the employee's stamina and cardiovascular endurance. The letter indicates that questions or comments may be forwarded to the members of the committee, whose names are provided, and further states that the union would be scheduling a referendum vote on the Program.
Obviously, the union vote did not fully support the Program, or this lawsuit would not have been filed. However, we see nothing in the collective bargaining agreement[7] that would require approval from *883 the local union before parts or all of the Program could be implemented. Nor have the firefighters or the local union directed our attention to any provision in that agreement mandating such approval.[8]
Therefore, based on our review of the record in this matter, we conclude that the evidence does not support the district court's decision in this case. The Program does not involve a classification plan or any amendment to the firefighters' existing classification plan; the evidence shows it has nothing to do with a person's qualifications for original entrance to employment as a firefighter or promotions according to the classification plan. Nor does any part of the Program provide a basis for disciplinary action. Therefore, implementation of the Program without prior approval through enactment of rules by the Board does not violate LSA-R.S. 33:2483 or any of the other statutory provisions governing classified employees of the city fire department. Nor are the fitness tests the type of examinations or evaluations required to be prepared, administered, and graded by the State Examiner. Finally, there was no showing made that the firefighters or the local union will suffer any harm, much less irreparable harm, if the Program is fully implemented.

CONCLUSION
For these reasons, the judgment of the district court granting a permanent injunction "of the city of Baton Rouge Fire Department's `Wellness Program' with regard to any and all aspects of mandatory employee physical fitness and/or exercise tests" is reversed, and judgment is rendered in favor of the city fire department, dismissing the firefighters' and the local union's petition for injunctive relief from implementation of the Program. In all other respects, the judgment is affirmed. All costs of this appeal are assessed against the firefighters and the local union.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The Initiative is Exhibit B to the stipulation.
[2] The Program is Exhibit A to the stipulation.
[3] Some of these worksheets are included in Exhibit C to the stipulation.
[4] This letter is part of the packet of information making up Exhibit C to the stipulation.
[5] The portions of the Program for which injunctive relief was not sought have significant monetary value. Under the Program, unless a firefighter chooses to use and pay his own physician for the annual medical evaluation, an option which is allowed, the valuable health benefits of a comprehensive annual medical examination and five-year cardiac stress test are provided during working hours at no cost to the firefighter. The firefighters also did not seek removal of the exercise equipment from the substations, nor did they ask to be relieved from being paid to use this equipment during working hours. Similar training could only be obtained by making individual purchases of such equipment or by investing in costly memberships at health and fitness clubs.
[6] The letter is Exhibit E to the stipulation.
[7] The collective bargaining agreement is Exhibit D to the stipulation.
[8] The only provision remotely addressing health and welfare is Article XII, which provides that "[t]he Employer agrees to make available to each employee covered under this Agreement the hospitalization, dental and life insurance presently in effect for other City-Parish employees, and any changes in these benefits," and which is clearly inapplicable to the implementation of the Program.