722 So.2d 1036 (1998)
Elmer J. GUIDRY, Sr., Plaintiff-Appellee,
v.
Stefan HEDBURG, et al., Defendants-Appellants.
No. 98-228.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1998.
Rehearing Denied December 16, 1998.
*1037 Chester R. Cedars, Breaux Bridge, for Elmer J. Guidry, Sr.
Philip J. Dugas, Baton Rouge, for Stefan Hedburg, et al.
BEFORE: YELVERTON, PETERS, and AMY, Judges.
YELVERTON, J.
Elmer J. Guidry (Elmer) sued Breaux Bridge Exports, Inc., and Stefan Hedburg claiming back due salary in the amount of $25, 257.72. After a trial the court rendered judgment in favor of Elmer for this amount finding that in a Buy-Sell Agreement there was a stipulation pour autrui in his favor entitling him to this money. We affirm, but our affirmation is based on the completed contract that is in the record and not on the Buy-Sell Agreement alone.
In the fall of 1989 Elmer's brother, Mervin Guidry, together with Luke Bourque and Lysekils Fryshus (a foreign corporation owned by Matt Robertsson), formed the corporation Breaux Bridge Exports, Inc., which engaged in the operation of a crawfish processing plant principally for exportation to Sweden. Elmer supervised the building of the plant and went on salary as plant manager.
Mervin and Luke Bourque, who together owned most of the stock, decided to sell their interest in Breaux Bridge Exports to Stefan Hedburg. On November 15, 1993, these three executed a Buy-Sell Agreement for $72,500. As part of the Buy-Sell Agreement, Hedburg agreed to pay $72,500 and assume responsibility for the debts of Breaux Bridge Exports as evidenced by a document attached to the Buy-Sell Agreement marked Exhibit A entitled "Debts Owed By Breaux Bridge Exports." Paragraph 3 of the Buy-Sell Agreement specifically recognized this obligation in the language:
Breaux Bridge Exports, Inc., and Stefan Hedburg will pay all legal obligations or debts owed by Breaux Bridge Exports, Inc., as of the 23rd day of October, 1993, which is set forth on a list marked Exhibit "A" and attached hereto.
One of the items listed on Exhibit A was back salary due Elmer in the amount of $25,257.72.
This is the stipulation pour autrui on which Elmer relied for his claim. When Hedburg later refused to pay, Elmer filed this suit.
On the morning of trial Hedburg filed an exception of no right of action on the ground that Elmer had no interest to pursue because he was not a party nor was he a third-party beneficiary of the Buy-Sell Agreement. The exception was referred to the merits.
The main issue at trial, as perceived by Elmer and the court, was whether Elmer was a third-party beneficiary of the Buy-Sell Agreement. Elmer maintained that he was because the Buy-Sell Agreement created a stipulation pour autrui in his favor. To defeat the stipulation, Hedburg attempted to introduce parol evidence to vary or modify *1038 the terms of the Buy-Sell Agreement and its attachment. However, the trial court sustained Elmer's objection to the introduction of this parol evidence finding that the written agreement was clear and did not need explaining. The parol evidence is in the record as a proffer.
The proffered parol included the testimony of Gerald Delaunay and Vincent Saitta, attorneys for the defendants. Delaunay represented Hedburg but was not present at the November 15, 1993 negotiations leading to the confection of the Buy-Sell Agreement. Saitta was present. The attorneys proffered testimony that Hedburg never intended to pay Elmer the back salary. Saitta testified that the language in the agreement that appeared to be a promise to pay Elmer was put there merely to protect Mervin, who was Elmer's brother, and let Mervin "off the hook" from having to answer to Elmer.
In addition to the proffer of testimony, there was also a proffer of documentary evidence by Hedburg. He tried to introduce a copy of a fully executed authentic act of sale dated December 3, 1993, together with an unsigned, undated "addendum" to the earlier Buy-Sell Agreement. These documents were proffered because the trial judge sustained Elmer's objection to their admissibility on the ground of surprise: the documents emerged for the first time on the morning of trial.
After consideration of what he considered to be the proper evidence, the trial judge found a stipulation pour autrui in favor of Guidry originating from the Buy-Sell Agreement and rendered judgment in his favor in the amount of $25,257.72 against defendants Stefan Hedburg and Breaux Bridge Exports, Inc. From this judgment, the defendants appealed.

ISSUES
There are two assignments of error raised by Hedburg in this appeal. The first is whether the trial judge should have admitted the proffered testimonial and documentary evidence. The second is whether, considering the proper evidence, Elmer is a thirdparty beneficiary entitled to payment of the listed salary.

OPINION

Testimonial Evidence Ruling
Under Louisiana law and jurisprudence, parol evidence is generally inadmissible to vary the contents of a document or to show the intentions of the parties when it is already clear from the fact of the document itself. La.Civ.Code art. 1848 reads:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
In Braun Welding Supply v. Praxair, Inc., 94-1336, p. 6 (La.App. 3 Cir. 4/5/95); 654 So.2d 388, 391, we approved of the principles set forth in Spohrer v. Spohrer, 610 So.2d 849 (La.App. 1 Cir.1992), at pages 851-853, concerning the admissibility of parol evidence regarding written contracts:
Legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Kean v. Lemaire, 451 So.2d 151, 153-54 (La.App. 1st Cir.1984). Courts are bound to give legal effect to all contracts, according to the true intent of the parties, and the intent is to be determined by the words in the contract when they are clear and explicit and lead to no absurd consequences. LSA-C.C. arts.2045 and 2046; Massachusetts Mutual Life Insurance Company v. Nails, 549 So.2d 826, 832 (La. 1989); Foret v. Louisiana Farm Bureau Casualty Insurance Company, 582 So.2d 989, 991 (La.App. 1st Cir.1991); Ransom v. Camcraft, Inc., 580 So.2d 1073, 1077 (La.App. 4th Cir.1991); Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924, 927 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989); Schroeter v. Holden, 499 So.2d 309, 311 (La.App. 1st Cir.1986). See also Kean v. Lemaire, 451 So.2d at 154. When the words of a contract are clear and explicit and lead to no *1039 absurd consequences, no further interpretation may be made in search of the parties' intent. Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927. The rules of interpretation establish that when a clause in a contract is clear and unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Borden, Inc. v. Gulf States Utilities Company, 543 So.2d at 927. As a general rule, parol evidence is inadmissible to vary, modify, explain, or contradict a writing. Kean v. Lemaire, 451 So.2d at 154.
In keeping with these precepts, we find that both the Buy-Sell Agreement and the proffered Act of Sale (which we are going to admit into evidence) are unambiguous as to the debt owed Elmer. Despite appellants' attempts to distinguish the two documents, the Act of Sale essentially confirms and carries out the Buy-Sell Agreement originally confected between the parties.
The Act of Sale clearly expresses the intent that Hedburg would assume the obligations of Breaux Bridge Exports, Inc. Attached to the Act of Sale is Exhibit A which is entitled "Claimed Liabilities of Breaux Bridge Exports, Inc." The Act of Sale declares:
Sellers further warrant and represent that Exhibit A attached hereto and made part hereof by reference ... represent all of the debt claimed against Breaux Bridge Exports, Inc. by third parties, and that there are no other debts owed or claimed by third parties to be owed by Breaux Bridge Exports, Inc.
(emphasis supplied)
More significant is the following sentence which states,
Seller agrees to hold the corporation and Purchaser harmless from any other liabilities, and to defend and indemnify them from any other claims or liabilities.
(emphasis supplied)
Clearly, then, the language of the sales document recognizes the debts owed by the company, and the sellers (Guidry and Bourque) promise only to pay any other debts owed by the company.
We find further support in a subsequent paragraph of the agreement which states that, upon execution of the sale and payment of the price, two of the debts shown on Exhibit A "shall be deemed satisfied." The two debts were those owed to Luke Bourque and Mervin Guidry. However, there is no such stipulation as to the debt owed to Elmer. If Hedburg had no intention of paying Breaux Bridge Exports' debt to Elmer, he had the opportunity to similarly exclude it, and he did not do so.
In summing up, Hedburg unambiguously assumed those debts of Breaux Bridge Exports which were recognized and listed in Exhibit A and attached to the Act of Sale. The sellers warranted that this exhibit represented all of the debt claimed against Breaux Bridge Exports, Inc. by third parties, that there were no other debts owed or claimed to be owed, and that the seller would indemnify the purchaser from all other claims or liabilities. Having failed to eliminate the debt owed to Elmer from the exhibit, Hedburg assumed the obligation to pay him. The sales document created a stipulation pour autrui in Elmer's favor.
The proffered parol evidence would have flatly negated the contents of those documents as they applied to Elmer. This parol evidence would have been the testimony of two attorneys, both representing the defendants, stating that they knew what the parties intended when they signed the document. Saitta testified by proffer that the purpose was to get Mervin (a seller-stipulator and also Elmer's brother) "off the hook" in case he had a problem with his brother. Saitta also would have testified that no one intended that Elmer would actually be paid.
The wisdom of the parol evidence rule is nowhere better illustrated than in this very case. The excluded testimony would have totally negated the intent of the contracting parties to pay Elmer, as expressed in their written contracts. Not only that, but the supposed real intent of the parties would have been based on discussions that occurred during times when the sellers were not always *1040 present. Saitta would have testified that Luke Bourque came in the room just to sign, then left; and that Mervin Guidry left for a time after they agreed to put his brother Elmer's debt on Exhibit A. The only people who stayed throughout the four-hour negotiating time were two attorneys, Saitta and McHugh, and two parties, Hedburg and Robertsson. Hedburg testified at the trial that it was not his intention to pay Elmer. Mervin Guidry and Luke Bourque were Elmer's witnesses at the trial, and their testimony was directed only toward establishing the debt Elmer claimed. They testified for him, not against him. On cross-examination neither was asked what took place at the negotiations meeting, nor was either asked whether his intent as to Elmer's claim was different than stated in the written contracts. We agree with the trial judge's ruling rejecting the parol evidence.
As a final argument on behalf of their attempts to introduce parol, the defendants argue that Elmer lacks the capacity to object because he is not a party to the contract of sale. They argue that the parol evidence rule applies only to actions between the parties to a contract, not to actions between parties and third persons. For this rule they cite Hobbs v. Central Equip. Rentals, Inc., 382 So.2d 238, 243 (La.App. 3 Cir.), writ denied, 385 So.2d 785 (La.1980), which states that "[t]he parol evidence rule applies only to actions between the parties to an act or contract and their privies, and not to actions between the parties and third persons." The common law term "privy" is defined as, "A person who is in privity with another. One who is a partaker or has any part or interest in any action, matter, or thing." Black's Law Dictionary, 5th Ed. If Elmer is a thirdparty beneficiary, he is surely a privy to a contract which confers a stipulation pour autrui in his favor. He has the right to enforce the contract or demand performance from the promisor. La.Civ.Code art.1981. There is no merit to this argument.
"If the language of the agreement is explicit and unambiguous, the contract must be enforced as written." Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97); 696 So.2d 1031, 1037, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. Here, based on the language they used in their contracts, there is no doubt as to the intentions of the parties. Introduction of parol evidence is unnecessary where there is no question regarding the written terms of the contract. Therefore, we do not consider the parol evidence introduced regarding the intentions of the parties to the Buy-Sell Agreement. Nor do we find any ambiguity in the language of the Act of Sale. The language from the Act of Sale being clear, we will enforce it as written.

Documentary Evidence Ruling
The final sales agreement, or "Act of Sale of Stock," dated December 3, 1993, was executed two weeks after the Buy-Sell Agreement. However, it was not until the morning of trial, when Hedburg attempted to introduce it into evidence, that its existence became known to Elmer. Elmer, surprised, objected to its admission on the ground that the document had just surfaced after three years of unresponsive discovery. What appears to have been the main reason for the objection, however, was the unsigned, undated "addendum," which was sought to be introduced along with the Act of Sale. The "addendum," as it turned out, was prepared as an addendum to the Buy-Sell Agreement, not to the Act of Sale. The language of the "addendum" bluntly stated that no stipulation for any third party's benefit was intended. The trial judge denied the admission of both of these documents on the basis of unfair surprise and the fact that the litigation was based on the only written contract known to Elmer, the Buy-Sell Agreement.
While the ruling of the trial judge was certainly understandable, from our advantaged position of overview and thoughtful examination of the entire case, we now find that the Act of Sale should have been admitted. Hedburg himself offered it. It is in authentic form. The actual sale document is unquestionably relevant and material. The proffer was signed by the parties to the sale and notarized. No one has questioned that the copy is a true one. We choose to declare it admissible in evidence in the interest of justice. La.Code Civ.P. art. 2164; Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
*1041 We will not, however, admit the written but undated and unsigned "addendum." The addendum has no indicia of authenticity on its own. Proof of its contents would require parol evidence. As did the trial judge, we also reject it for the same reasons we gave in our earlier discussion of parol evidence.

Stipulation Pour Autrui
The issue of whether Elmer should be accorded third-party beneficiary status was raised by the filing of an exception of no right of action. The peremptory exception of no right of action tests whether plaintiff has a real or actual interest in the action. Arcadian Corp. v. Olin Corp., 97-174 (La.App. 3 Cir. 6/18/97); 698 So.2d 9, 13. We find that Elmer does in fact have a right of action because he is a third-party beneficiary of the contract between Mervin Guidry, Luke Bourque, and Stefan Hedburg for the sale of Breaux Bridge Exports, Inc.
At trial, the parties centered their arguments on the Buy-Sell Agreement. Hedburg maintains that the Buy-Sell Agreement, standing alone, is not enough to confer upon Elmer the status of a third-party beneficiary. The main thrust of Hedburg's argument is the legal one that a buy-sell agreement cannot confer the rights of a thirdparty beneficiary upon another. "An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance." La.Civ.Code art. 2623. However, we do not decide the issue of whether a buy-sell agreement standing alone is sufficient to confer third-party beneficiary status in favor of another. It is not necessary to decide that issue because the Act of Sale in authentic form is in the record, and we have found it admissible in evidence. The signed Act of Sale consummates the Buy-Sell Agreement, without substantial change insofar as Elmer's rights are concerned. We base our decision on the Act of Sale and not solely upon the Buy-Sell Agreement.
The question comes down to whether Elmer is a third-party beneficiary of the final sales agreement executed among Mervin Guidry, Luke Bourque, and Stefan Hedburg. A contracting party may stipulate a benefit for a third person called a third-party beneficiary. La.Civ.Code art.1978. Once the third-party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement. Id. Further, this stipulation gives the third-party beneficiary the right to demand performance from the promisor. La.Civ.Code art.1981.
The jurisprudence requires that a stipulation in favor of another party be express and in writing. Homer Nat. Bank v. Tri-District Dev., 534 So.2d 154, (La.App. 3 Cir.1988), writ denied, 536 So.2d 1236 (La. 1989). The stipulation pour autrui is never presumed; rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Id. at 156. Recognition of a third-party beneficiary's rights usually occurs where one party contracts to perform an obligation owed by another party to a third person. Tallo v. Stroh Brewery Co., 544 So.2d 452 (La.App. 4 Cir.), writ denied, 547 So.2d 355 (La.1989). Thus, a stipulation pour autrui arises when a written contract confected between parties stipulates or provides for some benefit or advantage in favor of a third party. Although not an actual party to the contract, a third-party beneficiary acquires rights with respect to the benefit conferred including the right to demand performance from the promisor. The stipulation in the present contract meets all of the elements required to make Elmer the beneficiary of the promise to pay his back wages.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.