JjMOON LANDRIEU, Judge Pro Tempore.
Plaintiff-appellant, International Marine Terminals Partnership (hereinafter referred to as “plaintiff’ or “IMT”), appeals a judgment in favor of the defendant-ap-pellee, Port Ship Service, Inc., denying plaintiffs Petition for Preliminary and Permanent Injunction and dissolving the temporary restraining order previously issued against Port Ship.
IMT operates a privately owned dock on which it conducts its business of loading and unloading ships for bulk storage and transfer. Such vessels require visits by immigration officials, the coast guard, military-type guards, deliveries of supplies and equipment, and medical care to crew members as well as the delivery of other goods and services. Port Ship provides transportation for such purposes to ships moored at the plaintiffs dock as well as at other locations along the Mississippi. For years Port Ship offered its services pursuant to a cooperative arrangement with IMT. That arrangement no longer exists and IMT has started offering the same services to ships at its dock that used to be provided by Port Ship. IMT now objects to Port Ship using its privately owned dock when providing services to ships docked there. IMT does not object to Port Ship providing such services from the water side of ships docked at its premises. |? Indeed, as the water there is navigable, Port Ship has as much right to water access as does IMT. Port Ship says that it prefers to service the vessels that it contracts with from riverside gangways. This is not always possible because IMT’s operation involves barge-mounted cranes that often block access to riverside gangways, thereby forcing Port Ship to access the ship via IMT’s dock. Port Ship even argues that IMT often intentionally blocks riverside access because IMT wishes to compete with Port Ship for the service business. The record does not support this argument.
IMT sought to enjoin Port Ship from using its dock facilities and a TRO was granted by the trial court in favor of IMT. However, in dissolving that TRO and dismissing IMT’s petition for preliminary and permanent injunction, the trial court issued written reasons which in pertinent part state that:
IMT’s docks are located several hundred feet out in navigable waters of the Mississippi River, and the permit by which they exist prohibit IMT from impeding navigation in the river in any way.
IMT does not contest this finding. The trial court’s written reasons go on to state that:
The navigation of the ships which moor at IMT and their very seaworthiness require the visits and services which are provided by Port Ship Service. This fact is known to IMT, in fact, they have begun providing the same services for profit in competition with Port Ship Service.
IMT does not dispute this finding. IMT does not dispute the fact that the services provided by Port Ship are services that are necessarily and customarily provided to a ship. The ships serviced by IMT are the proper parties to assert this implicit right of service. However, in this case none of the ships with whom IMT could be said to have such an implicit understanding are party to these 1¡proceedings. Port Ship does not assert any direct business or contractual relationship with IMT. In fact, the record supports the trial court’s finding of a “failed business relationship between the two companies.” Accordingly, the underlying questions as seen by this Court are:
*202 1. Does Port Ship have the right to assert the right of service running in favor of ships using IMT’s facilities? The nonjoinder of a party (in this case the owners of cargo on the ships moored at IMT’s docks) or the failure to state a right of action by the plaintiff may be noticed by this Court on its own motion. La.C.C.P. art. 927B.
2. If Port Ship does not have a third party right arising out the contract existing between IMT and the cargo owner with ships moored at IMT’s dock, does Port Ship have a right to use the dock based on some other legal theory?
Under Article I § 4 of the Louisiana Constitution, IMT has the right to use, control and protect its privately owned and appropriately permitted dock. These rights allow IMT to contract with cargo owners to permit the ships carrying their cargo to dock at their facility while the ship is being loaded or unloaded. These contracts may produce effects for third parties only when provided by law. La. C.C. art. 1985. The 1984 Revision Comments under La. C.C. art. 1985 provides in pertinent part:
(b) Because of the ever-increasing importance of third party-beneficiary contracts, this Article provides that contracts bind only the parties unless they have lawfully stipulated otherwise.
Port Ship has the burden of proving the existence of a stipulation pour autrui running in its favor. Paul v. Louisiana State Employees’ Group Ben. Program, 99-0897 (La.App. 1 Cir. 5/12/00), 762 So.2d 136. Port Ship has not referred to a stipulation pour autrui or third party beneficiary contract using those terms, but many of its allegations have such implications.
14A stipulation pour autrui is never presumed; rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Id.; Guidry v. Hedburg, 98-228 (La.App. 3 Cir. 11/4/98), 722 So.2d 1036. It must be express and in writing. Id.; Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4 Cir. 3/19/97), 692 So.2d 1203. There is nothing in the record that meets these requirements.
Port Ship, in effect, argues that it has the rights arising out of whatever contractual/business relationship exists between the ships it services and IMT. Port Ship does not contend that there is anything in the contractual/business relationship existing between the ships it services and IMT specifically or explicitly conferring any rights on Port Ship. Port Ship contends that its right to service the ships docked at IMT’s dock is implicit. However, Port Ship does not contend that this implicit right is exclusive to it. The trial court’s written reasons for judgment says that any “ship service company which has been contracted by the ship is entitled to access to the ship by and across the dock to which the ship is moored, or by any other means of access which either the ship-owner [sic] or its invitee deem to be reasonable and necessary to facilitate that operation.” This statement by the trial court effectively wrests control of IMT’s dock away from IMT and hands it to the owners of ships moored at the dock and Port Ship. Such a generalized, non-specific, implicit right does not constitute a stipulation pour au-trui under La. C.C. art. 1978[1], et seq., in favor of Port Ship. Moreover, the “failed business relationship” existing between *203 Port Ship and IMT is such that it can be certain that IMT, in contracting with cargo owners to moor the ships at its |sdock, did not have the requisite intent to confer a benefit upon Port Ship such as would be required to constitute a stipulation pour autrui in favor of Port Ship.
The trial court’s written reasons for judgment fail to clarify the legal theory upon which Port Ship may claim the benefit of the contractual relationship existing between the cargo owner with ships moored at IMT’s dock and IMT. Port Ship does not contest the fact that it has no direct legal relationship with IMT.
IMT makes the following statement in its original appellant brief:
To discharge ships, IMT and the ship owner place derrick barges along side the outside of ships. The barges are tied in a way to safely and efficiently accomplish the discharge of the ship. For instance, the crane barge is tied to the ship with a lead wire of sufficient length to safely facilitate the movement of the crane along side the ship to prevent the line from breaking, thus endangering persons and property. This safe, necessary, and customary tie-up may at times unintentionally prevent use of the riverside gangway of ships.
(Footnotes deleted throughout.)
In other words, IMT is also providing services to the ship moored at its dock when it places derrick barges along side the outside of the ship. Port Ship does not contest this fact, although Port Ship does contend that IMT may do so intentionally to block Port Ship’s waterside access to the ship. As we noted earlier, the record does not support this contention.
A trial judge has great discretion to deny a request for a preliminary injunction. A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, pp. 8-9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708. The trial court’s denial of IMT’s request for a preliminary injunction will not be overturned by this Court “absent clear abuse of the great discretion offered the trial court.” HCNO Services, Inc. v. Secure Computing Services, Inc., 96-1693, 96-1753, p. 8 (La.App. 4 Cir. 4/23/97), 692 So.2d 835, 841. Before issuing a preliminary injunction, the trial court should consider whether the threatened harm to the plaintiff outweighs the potential harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest. Chandler v. State, Dept. of Transp. & Development, 02-1410, p. 6 (La.App. 1 Cir. 3/28/03), 844 So.2d 905, 909.
Port Ship states in its brief that it “has never sought access, much less unfettered access, to any other property at the IMT facility.” Port Ship claims that “[t]he only reason that Port Ship needs to use IMT’s dock is because IMT blocks the river-side gangway with its crane barges.” IMT does not dispute Port Ship’s right to waterside access. But IMT has just as much right to waterside access. When IMT ties up crane barges to the vessels it is servicing at its dock it is just a temporary condition occurring during the course of IMT’s servicing of the vessel. Of course, when Port Ship is moored at the riverside gangplank it is reasonable to assume that Port Ship’s presence there would block access to others including IMT. Therefore, we find this argument unpersuasive. Rather, this is an ordinary inconvenience rather than a violation of Port Ship’s right to use navigable waters. Moreover, IMT allows Port Ship to access its dock if responding to an emergency while the gangway is blocked.
IMT argues that to allow Port Service the type of access to its dock that Port Ship seeks would be a violation of the *204 Maritime Transportation Security Act of 2002 (MTSA). This post 9/11 national security legislation is intended to prevent unauthorized personnel form accessing the nation’s vital shipping interests. That is not the issue here.
We agree with IMT that if Port Ship were to commit repeated trespasses upon IMT’s dock, IMT would be entitled to the injunctive relief it seeks. When a 17petitioner seeks to have a person enjoined from continuing an illegal act, he is not required to show immediate or irreparable harm. Worthen v. DeLong, 99-1149 (La.App. 1 Cir. 6/23/00), 763 So.2d 820, 826; Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597, 600; Davis v. Town of St. Gabriel, 01-0031 (La.App. 1 Cir. 2/15/02), 809 So.2d 537, 542, writ denied, 02-0771, 02-0803 (La.10/14/02), 827 So.2d 420. Port Ship does not dispute the fact that it has entered IMT’s dock without permission and that it would do so again in the future unless enjoined from doing so.
We also agree with IMT’s contention that state law applies:
As historically construed by the Supreme Court, maritime jurisdiction does not embrace accidents on land, or injuries inflicted to or on extensions of land such as docks and piers. Parker v. South Louisiana Contractors, Inc., 537 F.2d 113 (5th Cir.1976), reh. denied, 539 F.2d 710 (5th Cir.1976), cert. denied, 430 U.S. 906 (97 S.Ct. 1175, 51 L.Ed.2d 582) (1977), citing Victory Carriers, Inc. v. Law, 404 U.S. 202 (92 S.Ct. 418, 30 L.Ed.2d 383) (1971) and Nacirema Operating Co. v. Johnson, 396 U.S. 212 (90 S.Ct. 347, 24 L.Ed.2d 371) (1969).
Tidewater, Inc. v. Baldwin-Lima Hamilton Corp., 410 So.2d 355, 359 (La.App. 4 Cir.1982).
Port Ship argues that its entry upon IMT’s dock is privileged because it is fulfilling a contractual obligation to a vessel moored there. The only case Port Ship cites in support of this proposition is Marastro Campania Naviera, S.A. v. Canadian Maritime Carriers, Ltd., 959 F.2d 49, 53 (5th Cir.1992). In that case entry onto the property of another was done pursuant to court order. It therefore does not present a persuasive analogy.
Port Ship also cites the Restatement (Second) of Torts but it is equally unpersuasive. Nothing in the language of the sections of the Restatement relied |supon by Port Ship nor in the examples supporting those sections, bears any relationship to the facts of the instant case.
Even were this court to assume for purposes of argument that when IMT allows ships to moor at its dock that it implicitly authorizes dockside access to all those with whom such ships may contract, such implicit authorization only lasts until it is explicitly revoked by IMT. In this case there is no question that if Port Ship ever had such implicit authorization, it has been explicitly revoked by IMT. Therefore, whatever implicit authorization Port Ship may have had arising out of the mere fact that it had a contractual relationship with a ship moored at IMT’s dock has long since been revoked. Furthermore, there is no evidence of any explicit contractual provision existing between any cargo owner with a ship moored at IMT’s dock and IMT, requiring IMT to allow dockside access to those providing services to the ship such as Port Ship. Additionally, there is no evidence that even if there were such contractual provisions that they could be construed as stipulations pour autrui enforceable by third parties such as Port Ship. Therefore, we cannot agree with the following findings of the trial court:
Thus, when IMT invites a ship to moor at its facility in order to profit from and perpetuate its business, IMT *205 invites all those upon whom the operation of the ship relies, including ship service companies. IMT has no right to impede anything which may be necessary in the operation of such a ship, including the delivery of groceries or the repair of equipment.
A ship service company which has been contracted by the ship is entitled to access to the ship by and across the dock to which the ship is moored, or by any other means of access which either the ship-owner [sic] or its invitee deem to be reasonable and necessary to facilitate that operation.
| aPort Ship is not a trespasser at IMT if engaged in satisfying a contractual obligation to a ship moored at IMT.
As such, IMT has no right to impede nor enjoin use of its dock by Port Ship Service if that company has a contractual relationship with a ship moored at IMT.
This Court is not prepared to allow Port Ship to impinge upon IMT’s private property rights in the absence of any relevant legal authority. Port Ship has cited no relevant legal authority.
Therefore, we find that the trial court committed reversible error by abusing its discretion in dissolving the TRO and in denying IMT’s prayer for preliminary and permanent injunction. Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion. Port Ship is to bear the cost of this appeal.
REVERSED AND REMANDED.

. La. C.C. art. 1978 permits a contracting party to stipulate a benefit for a third person.