881 So.2d 140 (2004)
Walter T. GRAVES, Jr., Plaintiff-Appellant
v.
RIVERWOOD INTERNATIONAL CORP., et al., Defendant-Appellee.
No. 38,842-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*141 Brian F. Blackwell, Jody Anderman, Baton Rouge, for Appellants, Gertrude Graves, et al.
F. Paul Leger, Thomas Bergstedt, Lake Charles, for Appellee, Olin Corporation.
Before BROWN, CARAWAY and MOORE, JJ.
MOORE, J.
The plaintiffs, the heirs of Walter T. Graves Jr., appeal a partial summary judgment that dismissed all third-party beneficiary claims against Olin Corporation ("Olin"), in their suit for wrongful death and survival damages arising from a fatal case of mesothelioma. For the reasons expressed, we affirm in part, reverse in part, and remand.

Factual and Procedural Background
Graves worked at the West Monroe paper mill from 1943 to 1985. In early 2000, he was diagnosed with malignant mesothelioma, a disease commonly resulting from exposure to and ingestion of asbestos fibers. In April 2000 Graves filed this suit against Riverwood International Corp., the then-current name of the mill, and 13 other companies that allegedly made or supplied asbestos products used in the mill over the years. Graves's claims were based on negligence and strict liability. In June 2000, Graves died; his widow and two adult children filed a first supplemental and amending petition substituting *142 themselves as parties plaintiff, and naming Olin as the owner of the mill.
Olin initially filed a motion for summary judgment claiming the exclusive remedy of workers' compensation, La. R.S. 23:1031.1. The district court granted this motion in June 2001, dismissing all negligence and intentional tort claims, but giving the plaintiffs leave to amend the petition to allege contract claims.
The plaintiffs' "second supplement and amendment to original petition," filed June 29, 2001, added 13 subparagraphs alleging Olin's contractual liability. They alleged that Olin, or its corporate predecessors, owned and operated the West Monroe mill from 1925 until January 1, 1967. Effective that date, Olin transferred ownership and operation of the mill to a wholly-owned subsidiary called Olinkraft Inc. ("Olinkraft"). According to the plaintiffs, Olinkraft then contracted with Olin to provide industrial hygiene services to Olinkraft, and that Olinkraft's direct employees, including Graves, were third-party beneficiaries of that contract. The plaintiffs further alleged (with emphasis added):
¶ 27-H: On information and belief, Olin Mathieson [a corporate predecessor] and Olin were contractually obligated to perform and/or actually undertook to perform the following duties and responsibilities: * * * (c) To see that Walter T. Graves Jr. and his co-workers used safe and sound principles and practices in their work; * * * (h) To make certain that Walter T. Graves Jr. and his co-employees were provided a safe working environment and/or a safe place to work. * * *
¶ 27-J: Olinkraft's contract with Olin required Olin to perform the duties and responsibilities set forth in the preceding paragraphs and Olin actually undertook, on an operational basis, to perform said duties and fulfill said responsibilities; however, Olin negligently failed to carry out those undertakings and assumed duties in the manner more particularly described in the following paragraph.
In response, Olin filed the instant motion for summary judgment, asserting that Olin "has not located a contract between Olin and Olinkraft regarding industrial hygiene services which plaintiff alleges to be a third party beneficiary to." It conceded there was a service contract dated May 31, 1974, but this obligated Olin only to assist in operating the facility, not to confer any benefits on individual Olinkraft employees.[1] In support of its motion, Olin attached portions of the depositions of Ms. Doreatha Brueggemann, Olin's chief litigation paralegal, and Dr. Henry J. Muranko, Olin's industrial hygienist from 1971-'81. Dr. Muranko testified he was unaware of any "formal arrangement" for Olin to provide industrial hygiene services to Olinkraft; although Olin officials periodically visited the plant and wrote safety reports, Olin had no authority to implement any changes.
By supplemental memorandum, Olin argued that a stipulation pour autrui is never presumed. La. C.C. art. 1985; Stadtlander v. Ryan's Family Steakhouses Inc., 34,384 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 790. Olin also cited State v. Joint Comm'n on Accreditation of Hospitals, 470 So.2d 169 (La.App. 2 Cir.1985), in which this court declined to find that kidney patients were third-party beneficiaries of a contract whereby a state *143 commission provided a "survey team" to inspect and report on dialysis machines at a state-run hospital. Olin contended that Graves's assertion of third-party beneficiary status had no more support than that of the kidney patients in State v. Joint Comm'n, supra.
The plaintiffs opposed the motion, quoting portions of Ms. Brueggemann's deposition stating that (1) Olin employees went to the West Monroe facility after 1967 to perform environmental and industrial hygiene services; (2) the purpose of these visits was to apprise plant management of potential workplace hazards; and (3) Olin never provided the mill with any documents or warnings concerning the use of asbestos. They also quoted reports from Dr. Leonard Krause, a member of Olin's industrial hygiene department from the late 1960s to the mid-'70s, noting that Olinkraft's "[m]anagement has an obligation to treat workers' health and workers' exposures with prudence," and that "there are several major occupational hazards which are of paramount concern and constitute a potential hazard to employees." The plaintiffs argued that "based on Olin's conduct, there is no doubt that Olin assumed the duty to protect the employees of Olinkraft, including the plaintiffs in this case, from workplace hazards."
By "ruling and judgment" dated August 29, 2003, the district court granted summary judgment on the third-party beneficiary issue and ruled on other pending motions. By this time, the plaintiffs had settled with or voluntarily dismissed all defendants except Olin and one insulation maker. The matter proceeded to trial against these two defendants on September 15, 2003; however, after the jury was selected, which had taken over two days, the plaintiffs dismissed claims against the insulation maker, which had just filed for bankruptcy.
On September 18, moments into the plaintiffs' opening statement, Olin objected to any argument that it had assumed a duty to protect Olinkraft's employees, including Graves. The rest of the day was spent in argument, both on and off the record. Although it is not clear from the transcript, the parties concede in brief that the subject of the argument was whether the plaintiffs had sufficiently alleged an assumption of duty by Olin to provide industrial hygiene services for the benefit of Olinkraft's employees, and that the court ruled in camera that they had not.
The next morning, the court dismissed the jury and issued an order stating that its "order of August 29, 2003, foreclosed all claims of plaintiffs, including those for wrongful death, for any period of time after December 31, 1966." The court certified this as a final ruling and the plaintiffs took the instant appeal.

Applicable Law
Louisiana law utilizes a system of fact pleading; no technical forms of pleading are required. La. C.C.P. art. 854; Ramey v. DeCaire, XXXX-XXXX (La.3/19/04), 869 So.2d 114; Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706. The plaintiff need not plead a theory of the case, but only facts that would support recovery. Ramey v. DeCaire, supra. Moreover, every pleading must be construed so as to do substantial justice. La. C.C.P. art. 865; Metro Riverboat Assocs. Inc. v. Louisiana Gaming Control Bd., XXXX-XXXX (La.10/16/01), 797 So.2d 656; Williams v. State, 34,691 (La.App. 2 Cir. 5/9/01), 786 So.2d 927, 155 Ed. L. Rep. 969.
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La. *144 C.C.P. art. 966 B; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191; Smith v. AAA Travel Agency, 37,728 (La.App. 2 Cir. 10/29/03), 859 So.2d 286, writs denied, XXXX-XXXX, XXXX-XXXX (La.2/6/04), 865 So.2d 731, 735. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1); Wiley v. Sanders, 34,923 (La.App. 2 Cir. 8/22/01), 796 So.2d 51, writ denied, 2001-2661 (La.1/11/02), 807 So.2d 235. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case. La. C.C.P. art. 966 E.
Appellate review of a summary judgment is de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Wadsworth v. Garrett, XXXX-XXXX (La.6/25/04), 876 So.2d 764. The court of appeal may grant a partial summary judgment. Agricredit Accept. Corp. v. Singleton, 33,661 (La.App. 2 Cir. 8/23/00), 767 So.2d 137.
Under certain circumstances, a parent corporation may affirmatively undertake the duty of safety owed by its subsidiary, with the result that the parent is liable for failing to assure the safety of the subsidiary's employees. Bujol v. Entergy Services Inc., XXXX-XXXX (La.5/25/04), ___ So.2d ___, 2004 WL 1157413, and citations therein.

Discussion
By their first assignment of error, the Graveses urge the district court erred in disregarding Louisiana's liberal rule of fact pleading in considering Olin's motion for summary judgment. They contend that their second amended petition "clearly and unequivocally alleges facts sufficient to permit a judgment to be rendered against Olin for its failure to use reasonable care in its undertaking to provide industrial hygiene services to Olinkraft and its employees resulting in damages to Mr. Graves and his family." This assignment has merit.
Under Louisiana's fact pleading system, the plaintiff must allege facts that would support recovery. Whether the allegations are sufficient is judged by a plain reading of the petition. Ramey v. DeCaire, supra; Fitzgerald v. Tucker, supra. As quoted above, the second amended petition alleges that Olin was "contractually obligated to perform and/or actually undertook to perform" certain duties "to see that Walter T. Graves Jr. and his co-workers used safe and sound principles and practices in their work" and that they "were provided a safe working environment and/or a safe place to work"; and that "Olin negligently failed to carry out those undertakings and assumed duties." These allegations clearly charge that Olin undertook the duty of safety owed by Olinkraft and thereby assumed a duty to provide a safe working environment. The district court was plainly wrong to find that the plaintiffs never alleged an assumption of duty.
By their second assignment the Graveses urge that the court erred in granting summary judgment. They contend there is sufficient evidence to proceed to trial on the issues of whether Olin (1) undertook to render services to Olinkraft, which it should have recognized as necessary for the protection of Mr. Graves; (2) failed to exercise reasonable care in the performance of that undertaking; and (3) undertook a duty owed by Olinkraft to Mr. *145 Graves. They further contend that when a duty to protect others against a particular harm has been assumed, liability may be created by negligent breach of that duty. Harris v. Pizza Hut of La., 455 So.2d 1364 (La.1984). Specifically, the Graveses contend that a parent company may assume the duty by establishing mandatory safety requirements for the subsidiary and breach that duty by not insuring compliance with those mandatory safety requirements. In support, they cite the appellate court's opinion in Bujol v. Entergy Services Inc., XXXX-XXXX (La.App. 1 Cir. 8/14/02), 833 So.2d 947, rev'd, XXXX-XXXX (La.5/25/04), ___ So.2d ___, 2004 WL 1157413.
Olin responds that no contract between itself and Olinkraft ever included any stipulation pour autrui in favor of Graves, and that such a stipulation can never be presumed. It argues that the most apposite authority is State v. Joint Comm'n, supra, in which this court rejected the argument that the committee's "primary purpose was to assure patients the optimal benefits that medical science has to offer." Olin does not address the issue of assumption of duty, which the first circuit found to exist in Bujol, but the supreme court later reversed on the facts presented. Instead, Olin maintains that the plaintiffs did not sufficiently plead the issue, so it was not before the court.
The Graveses alleged facts that would support recovery under two different theories. First, they alleged a written contract whereby Olin would provide industrial hygiene services to its subsidiary, Olinkraft, for the benefit of the latter's employees. The district court correctly found, despite the voluminous summary judgment evidence, no proof that such a contract with such a stipulation existed. A contract obligating Olin to perform industrial hygiene services for Olinkraft could produce benefits for third parties such as Graves "only when provided by law," i.e., when the parties clearly stipulated such a benefit. La. C.C. art. 1985; International Marine Terminals Partnership v. Port Ship Serv., XXXX-XXXX (La.App. 4 Cir. 12/30/03), 865 So.2d 199. In the absence of any written contract for industrial hygiene services, there is obviously no clear expression of a stipulation pour autrui in favor of Graves. The summary judgment will be affirmed insofar as it dismissed the Graveses' contract claim.
Second, the Graveses alleged that even without a contract, Olin undertook certain duties, particularly to make certain that Olinkraft's employees had a safe working environment or safe place to work, and negligently failed to carry out those undertakings and assumed duties, to the detriment of Mr. Graves. In support, the Graveses cite attachments to Dr. Muranko's deposition, showing that between 1969 and 1976, Olin was aware of the potential danger of asbestos dust, received OSHA regulations concerning its handling, and recommended warnings and safety procedures for Olin's own facilities in Shreveport and Lake Charles. The Graveses also cite Ms. Brueggemann's testimony that Olin performed environmental and industrial hygiene services at the West Monroe mill after 1967, but despite its knowledge of asbestos hazards, it never tested that facility for asbestos or advised Olinkraft of the potential danger. These allegations may create a genuine issue as to the Graveses' assumption of duty claim.
Appellate review of summary judgments is de novo. Wadsworth v. Garrett, supra. In Bujol, supra, the supreme court enunciated detailed rules for parent-corporation liability in cases of this kind, adopting the federal standard of Muniz v. National Can Corp., 737 F.2d 145 (1 Cir.1984), and the principles of the Restatement (Second) *146 of Torts, § 324 A.[2] Notably, this formulation postdated the instant hearing and did not guide the parties' presentation of evidence or the district court's analysis. Most importantly, the district court erroneously dismissed the assumption of duty claim and thus foreclosed the development of evidence to support or rebut it. For these reasons, we find the instant record inadequate for us to assess the evidence de novo and render judgment.[3] La. C.C.P. art. 865. We therefore remand the case for further proceedings in which the parties may develop the facts truly material to the assumption of duty claim under Bujol, supra.
We would finally note that in granting the partial summary judgment, the district court prohibited the Graveses from raising any argument that Olin had assumed a duty to protect Olinkraft's employees. Although there was no evidence of a contract to that effect, Bujol expressly permits the plaintiffs to introduce evidence that Olin undertook to perform a duty that Olinkraft owed to Graves. On remand, the parties may introduce any evidence and raise any arguments relevant to this issue.

Conclusion
For the reasons expressed, we affirm the partial summary judgment insofar as it dismissed the plaintiffs' contractual third-party beneficiary claim. We reverse, however, insofar as it dismissed the assumption of duty claim, and remand the case to the district court for further proceedings. Costs of this appeal are charged to Olin Corporation.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
BROWN, C.J., concurs with written reasons.
BROWN, C.J., Concurring.
The trial court's grant of partial summary judgment dismissed all claims occurring after December 31, 1966. As stated, the parties conceded that the issue presented was whether plaintiffs sufficiently alleged an assumption of duty by Olin to *147 provide industrial hygiene services for the benefit of Olinkraft's employees. I agree that they did, and because there exist material issues of fact on this subject, partial summary judgment was improperly granted. I would simply reverse.
NOTES
[1] A copy of the contract, attached to the motion, specified "certain accounting and clerical services being rendered by Olinkraft in respect of Olin's fleet of tractors and trailers based in West Monroe, Louisiana."
[2] Bujols stated: "Under the Muniz standard, other courts have held that it is not proof of an affirmative `undertaking' to show merely that a parent: (1) hired the safety director to work for the subsidiary; (2) assisted a subsidiary in `evaluating and inspecting the safety conditions' at the subsidiary's plant; or (3) conducted a negligent inspection. * * * [N]either a parent's concern with safety conditions and its general communications with the subsidiary regarding safety matters, nor its superior knowledge and expertise regarding safety issues, will create in the parent corporation a duty to guarantee a safe working environment for its subsidiary's employees[.] * * * Under § 324 A(a), a plaintiff must prove that the parent's breach of its assumed duty resulted in an increased risk of harm. This section requires `some change in conditions that increases the risk of harm to the plaintiff over the level of risk that existed before the defendant became involved. * * * Under § 324 A(b), a plaintiff must show that the parent undertook to perform a duty owed by the subsidiary to the plaintiff. This is a more stringent requirement than the `positive undertaking' requirement of the introductory paragraph. The majority of cases that [sic] have held a parent, or other entity, will only be liable for a voluntary assumption of duty under § 324 A(b) where that corporation's undertaking was intended to supplant, not just supplement, the subsidiary's duty. * * * Finally, § 324 A(c) requires that the harm was suffered because of reliance by the plaintiff or the subsidiary on the parent's undertaking to provide for safety at the subsidiary's plant." Id., at 12-15, ___ So.2d at ___, 2004 WL 1157413.
[3] The parties concede that aside from the contract and assumed duty claims, the Graveses still have a premises liability claim against Olin. The record does not show that this claim was severed or the trial bifurcated, so we are somewhat perplexed at the district court's decision to halt the trial and discharge the jury just because it rejected the contract claim.