# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-561

**BONNETTE AUCTION COMPANY, LLC**

**VERSUS**

**ZACH STEVENSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-3050
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.

**Ezell, J., dissents and assigns reasons.**

**AFFIRMED.**

**D. Reardon Stanford**
**Ted W. Hoyt**
**Russell B. Kahn**
**Hoyt & Stanford, L.L.C.**
**315 South College, Suite 165**
**Lafayette, LA 70503**
**(337) 234-1012**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    Zach Stevenson

**Charles D. Elliott**
**Vilar & Elliott, L.L.C.**
**Post Office Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
       **Bonnette Auction Company, LLC**

**PICKETT, Judge.**

The successful bidder on real estate auctioned at a public auction appeals the trial court's judgment ordering him to pay a Buyer's Premium of $35,500 to the auctioneer. For the following reasons, we affirm the trial court's judgment.

## FACTS

On April 24, 2014, Bonnette Auction Company, LLC (BAC) held an auction to sell two tracts of land with improvements situated in Beauregard Parish. The first tract consisted of fifty acres with an equine facility on it; the second tract was a home situated on forty acres. The auction was held at the request of the property owners. The owners suggested that Barbara Bonnette, a principal of BAC, contact Dr. Zach Stevenson regarding the auction of the equine facility. Dr. Stevenson had shown an interest in the property when the sellers attempted to sell it themselves, but he was not willing to pay the price they sought.

Dr. Stevenson attended the auction. According to his testimony, he arrived just as the auction was beginning. He registered to bid and was given a bidder number and some written materials. The auction began with the auction of the equine facility. Dr. Stevenson bid $355,000, the highest bid on the facility.

The equine facility auction was placed on "hold" while the home was auctioned. If an acceptable bid was made on the home and equine facility together, they would be sold together. That did not occur, however, and Dr. Stevenson remained the high bidder on the equine facility. At the conclusion of the auction, another BAC employee met with Dr. Stevenson to have him sign a purchase agreement.

The purchase agreement consisted of a nine-page standardized form prescribed by the Louisiana Real Estate Commission and a two-page addendum, titled "Additional Terms and Conditions." Ms. Bonnette testified that she drafted the addendum because closing attorneys are not always familiar with auction sales, specifically, what funds are to be collected and how they are to be disbursed. The two-page addendum was to clarify that issue for closing attorneys.

The pages of the standardized purchase agreement and the attached addendum were numbered sequentially "1 of 9" through "11 of 11." The purchase agreement stated the sale price as $390,500, the bid price plus 10% Buyer's Premium. The first page of the addendum, "page 10 of 11," referenced itemized changes to specific lines of the purchase agreement. One of the itemized changes states, in part: "A 10% Buyer[']s Premium will be added to the High Bid Amount for the Total Contract Sales Price as set forth in this contract." Another itemized change provides, "A 10% Buyer[']s Premium, calculated on the total Contract Sales Price, will be [paid] the auction company, Bonnette Auctions, LLC, at closing, to be held out of sales proceeds." The second page of the addendum itemized the High Bid Price of $355,000; 10% Buyer's Premium of $35,500; Total Contract Sales Price of $390,500; 10% deposit of $39,050, then restated: "Total Contract Sales Price X 10% = Commission to Bonnette Auctions $39,050."

Dr. Stevenson refused to sign the purchase agreement. He contends he did not sign the purchase agreement because he did not know about the Buyer's Premium when he bid on the property and did not have the funds to pay it. Ms. Bonnette contacted him after the sellers accepted his bid of $355,000 and had him sign a separate purchase agreement the day after the auction. The purchase agreement he signed set forth a sale price of $355,000; the second page of the

2

addendum to the purchase agreement set forth the sale price of $355,000 but no Buyer's Premium and no commission to BAC.

Dr. Stevenson purchased the property but did not pay the Buyer's Premium. After the closing, a BAC employee attempted to hand him an invoice for the Buyer's Premium, but he refused to take it, and the employee put it in the bed of his pickup truck. BAC attempted to collect the Buyer's Premium from Dr. Stevenson without success, then filed this suit. After a trial, the trial court awarded judgment in favor of BAC. Dr. Stevenson appealed.

## ASSIGNMENTS OF ERROR

Dr. Stevenson assigns five errors with trial court's judgment:

1. The trial court committed reversible error in admitting parol evidence to contradict or vary from the terms of the written contract.

2. The trial court committed reversible error in finding that Defendant, Zach Stevenson, was liable for a "buyer's premium" in contradiction of the executed contract.

3. The trial court committed reversible error in failing to find that Bonnette Auction Company waived and/or otherwise negated any "buyer's premium" to which they may have otherwise been entitled.

4. The trial court committed reversible error in finding that Bonnette Auction Company properly conducted itself with regard to the announcement and/or dissemination of the terms and/or conditions of the auction, including the alleged "buyer's premium."

5. The trial court committed reversible error in rendering the judgment at issue in favor of Plaintiffs.

## DISCUSSION

### *Parol Evidence*

When examining Dr. Stevenson and Ms. Bonnette as they testified at the trial, counsel for BAC asked questions concerning the terms of the sale, including the Buyer's Premium and Dr. Stevenson's execution of the purchase agreement. Counsel for Dr. Stevenson objected to testimony on the issue, arguing that because the purchase agreement was in writing, testimony was not admissible to change the terms of the agreement, specifically the Buyer's Premium, which was not reflected in the purchase price and shown as $0 on the addendum.

Louisiana Civil Code Article 1848 provides:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

BAC argued to the trial court that parol evidence was admissible regarding the Buyer's Premium because it was not a party to the purchase agreement: the purchase agreement was between the sellers and Dr. Stevenson. BAC also argued that there was no written contract between it and Dr. Stevenson regarding the Buyer's Premium; therefore, testimony was admissible to explain the agreement it made with Dr. Stevenson regarding payment of the Buyer's Premium.

The trial court agreed with BAC and allowed the parties to testify regarding the facts surrounding Dr. Stevenson's execution of the purchase agreement.

We find no error with this determination. The only documents pertinent to this issue in evidence are: 1) the unsigned purchase agreement with the attachment that reflected a 10% Buyer's Premium being added to the High Bid Price for a Total Contract Sales Price of $390,500, a 10% Deposit of $39,050, and a 10%

Commission being paid to BAC; and 2) the signed purchase agreement that reflects a 0% Buyer's Premium and $0 Commission being paid to BAC. These documents show that only the sellers and Dr. Stevenson were parties to the purchase agreement.

### *The Buyer's Premium*

The remainder of Dr. Stevenson's assignments of error pertain to the trial court's findings that BAC properly conducted the auction and that he is liable for the Buyer's Premium. Auctions are governed by the Auctioneer Licensing Law, La.R.S. 37:3101-3133. The compensation of auctioneers is provided for in La.R.S. 37:3124(C) which provides:

> (1) The auctioneer shall include in all advertisements, including but not limited to newspaper, radio, television, and brochures, the amount of any buyer's fee that will be charged.
>
> (2) The auctioneer shall post in writing at the registration desk, in a conspicuous place, the amount of any buyer's fee.
>
> (3) Upon opening an auction, the auctioneer shall verbally announce the amount of any buyer's fee, explain what the fee is, how such fee will be paid, and how the fee will work.

An audio recording of the auction was played at the trial. Ms. Bonnette began the auction with an explanation of how the auction would proceed. She first explained that the highest successful bidder would be required to deposit 10% of his bid with BAC at the conclusion of the auction. She further explained that the successful bidder would pay a 10% "Buyer's Premium" which would be added to the "Final Bid Price" for the "Total Purchase Price."

BAC also introduced a copy of the brochure it used to advertise the auction. The brochure sets forth the terms of the sale as:

DEPOSIT:
10% down

CLOSING:
in 45 days

*Guaranteed good title*

BUYER[']S PREMIUM:
10%

Ms. Bonnette testified that she recalled mailing Dr. Stevenson a copy of the brochure and that he would have been given one when he registered to bid the morning of the auction. Dr. Stevenson did not recall receiving a brochure in the mail or seeing a notice of the Buyer's Premium before the auction began. However, he did not deny receiving the brochure in the mail or that the brochure was given to him in the materials he received when he registered for the auction. He testified that he did not review the printed materials given to him when he registered for the auction.

Although Dr. Stevenson was present for Ms. Bonnette's explanation of the auction proceeding including the Buyer's Premium, he did not recall hearing her explanation before the auction began and admitted he could not dispute that she explained the Buyer's Premium before the auction began.

Dr. Stevenson argues that BAC uses the term Buyer's Premium as opposed to the term "buyer's fee" stated in the written documentation. The trial court found "The audio of the auction clearly" shows that Ms. Bonnette stated "in no uncertain terms the issue . . .of buyer's 10% fee responsibility–that fee to be charged to the successful bidder on any or all of the property purchased." The trial court further noted that Dr. Stevenson willingly participated in the auction and could have

sought clarification of any of the terms of the sale, including the Buyer's Premium, before bidding on the property.

Dr. Stevenson argued to the trial court, as he does here, that the BAC's printed material and announcements did not fully comply with the requirements of La.R.S. 37:3124(C). The trial court considered his argument, the printed materials, and Ms. Bonnette's announcement in light of the statute and found that "there was sufficient compliance with the statute requirements to negate any contention of lack of notice or concealment" by BAC. Accordingly, it concluded that the 10% Buyer's Premium applied to Dr. Stevenson's purchase of the property.

We find no error with this conclusion. As noted by the trial court, the audio recording of the auction shows that Ms. Bonnette clearly stated that a 10% Buyer's Premium applied to the auction. The brochure clearly stated that as well. We cannot say that the difference between La.R.S. 37:3124's use of the term "buyer's fee" is so different from the term Buyer's Premium that an educated man such as Dr. Stevenson would not understand the meaning of the term. Moreover, as the trial court observed, if he did have any question about the meaning of the term Buyers Premium, he could have asked Ms. Bonnette to explain the term before the auction began.

When the trial court considered whether BAC reached an agreement with Dr. Stevenson regarding payment of the Buyer's Premium, it specifically noted again that he initially contested paying it. The trial court continued, however, finding:

> [H]e could have walked away anytime before the closing of this property[,] but he ultimately purchased this property. If Stevenson had walked away from the bid and the purchase of the property on the day of the sale, there is no argument that he may not have owed any buyer's fee. However, the discussions with Bonnette continued into

7

the next day when he met with Ms. Bonnette and her daughter and testimony revealed that there was continued discussion regarding the buyer's fee. This court believes that while Stevenson contended that he would not pay the buyer's fee, the discussions actually revolved around <u>when</u> the buyer's fee would be paid, not if it would be paid at all. Ms. Bonnette testified that she even attempted to negotiate a lesser fee with Stevenson, which he refused. Accordingly, this court's position is that the buyer's fee could have been negotiated either lower or away but neither on of those were [sic] done. i.e.[,] no agreement was reached negating the fee.

The trial court's conclusion that Dr. Stevenson agreed to pay the Buyer's Premium, not at the closing on the sale of the property but at a later date, was a credibility determination. In *Rosell v. ESCO* , 549 So.2d 840, 844-45 (La. 1989) (citations omitted), the supreme court explained the importance of trial court credibility determinations:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

The evidence reveals no inconsistencies that cause us to question the trial court's credibility evaluations in this case. Therefore, we find no manifest error with the trial court's conclusion that Dr. Stevenson agreed to pay the Buyer's Premium after the closing.

## DISPOSITION

The judgment of the trial court is affirmed.  All costs are assessed to Zach Stevenson.

**AFFIRMED.**

BONNETTE AUCTION COMPANY, LLC

VERSUS

ZACH STEVENSON

**EZELL, Judge, dissenting**

I respectfully disagree with the majority's opinion that parole evidence was admissible to vary the terms of the contract and that Bonnette Auction Company (BAC) complied with the terms of the La.R.S. 37:3124(C).

La.R.S. 37:3124

I first disagree with the majority that BAC complied with the provisions of La.R.S. 37:3124. I find that the use of the term "buyer's premium" as opposed to the term "buyer's fee", used in the statute itself, is misleading. The word "premium" indicates that it is a reward or incentive. Obviously, this fee is not a reward or incentive to the buyer. Furthermore, while Ms. Bonnette explained that there was a 10% buyer's premium at the beginning of the auction, she did not explain "what the fee is, how such fee will be paid, and how the fee will work" as required by La.R.S. 37:3124(C)(3).

Parole Evidence

I further disagree with the majority that the parole evidence rule does not apply to BAC as a third party. Jurisprudence has established that the parole evidence rule only applies to actions between the parties to an act or contract. *Guidry v. Hedburg*, 98-228 (La.App. 3 Cir. 11/4/98), 722 So.2d 1036. However, the parole evidence rule also applies to the privies of the parties to the contract. *Id.*

A privy is "[o]ne who is a partaker or has any part or interest in any action, matter, or thing." *Id*. at 1040 (quoting BLACK'S LAW DICTIONARY 1080 (5th ed. 1979).

There is no question that BAC is a third-beneficiary to the contract since it claims that it is entitled to a fee based on the events which led to the signing of the purchase agreement. BAC specifically wants to vary the terms of the signed purchase agreement which provides that BAC is entitled to a 0% buyer's premium and 0% commission. Therefore, the parole evidence rule is applicable to BAC.

All conversations that BAC relies on in claiming that Dr. Stevenson agreed to pay a buyer's premium occurred when the purchase agreement was signed at Burger King the day after the auction. The documents signed at the closing were based on this agreement. There is no evidence of any agreement **subsequent** to the signing of the documents to pay a buyer's premium or commission. Therefore, the agreement between the parties is what is found in the four corners of the purchase agreement.

As such, I would find that Mr. Stevenson is not responsible for the buyer's premium of $39,050.00 and reverse the judgment of the trial court.